## CLEVELAND v. RANKIN.

No. 4244.    Opinion Filed June 8, 1915.

(149 Pac. 1131.)

**REFORMATION OF INSTRUMENTS—Mistake—Mutuality—Degree of Proof.**  Where an agreement, as reduced to writing by a scrivener, omits or contains terms or stipulations contrary to the common intention of the parties, the instrument will be corrected, so as to make it conform to their real intent, to the end that the parties be placed as they would have stood if the mistake had not occurred.  But in such case the party alleging the mistake must show exactly in what it consists and the exact correction to be made; that the mistake was mutual or common to both parties (that is, it must appear that both have done what neither intended).  On the point, and to justify a correction, the evidence must be full, clear, unequivocal, and convincing as to the mistake and its mutuality.  Mere preponderance of evidence is not enough.  The proof must establish the facts to a moral certainty and take the case out of the range of reasonable controversy; but it need not be so certain as to go beyond any possibility of controversy.

(Syllabus by Brewer, C.)

*Error from County Court, Grant County;*

*J. W. Bird, Judge.*

Action by John S. Rankin against B. M. Cleveland. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

*C. W. Stephenson* and *J. B. Drennan*, for plaintiff in error.

*A. C. Glenn* and *Sam P. Ridings*, for defendant in error.

Opinion by BRE.WER, C.   Rankin, as lessee of several tracts of improved land, brought this suit against Cleveland, owner and lessor of said land, for damages on account of the alleged failure of the lessor to turn over to him a certain dwelling house and other outbuildings, situated on one of the tracts of land embraced in the written contract of lease.

The written contract, after describing the land to be held for the term therein stated, adds "with the appurtenances." The principal defense made by Cleveland is that he and plaintiff agreed upon the terms of the lease, which embraced different tracts of land with different sets of improvements thereon, with numerous exceptions and reservations stated therein; and that it was distinctly agreed and understood between the parties that the dwelling house, barn, and outhouses involved in this controversy were to be excepted from the operation of the lease, in the writing, and the possession and right to possession thereof during the term of said lease was to remain in Cleveland; that this agreement, together with the other terms and provisions, was stated to. a scrivener, the cashier in the local bank, who was mutually agreed upon by the parties to reduce their contract to writing; that he was instructed to so insert the reservation of such improvements in the terms of the writing.

At the trial, defendant testified fully and clearly in accordance with the allegations of his answer on this point. The deposition of the scrivener was also read in evidence, and it tended quite strongly to support the claim of defendant that he had been instructed by the parties to make the reservation of the particular improvements, but had evidently forgotten, or overlooked inserting it at the time of writing said lease. On this defense the court instructed the jury in its instruction numbered 5 as follows:

"Every person who signs a written contract is presumed to know the contents thereof, and before the jury would be justified in changing or modifying the terms of such written contract, and finding that there was an omission in the provisions thereof, the evidence as to such mistake or omission must show that the same was a mutual mistake between the parties, and the evidence as to such omission must be clear and convincing to the jury. Such evidence must be so full and clear as to leave no room for controversy."

The giving of this instruction is urged here as error, as imposing too high a degree of proof on the defendant. We have examined the instruction in the light of the decisions of this court and of the Supreme Court of the United States, and have reached the conclusion that defendant has just cause for complaint. We have not overlooked the fact that a very high degree of proof is, and ought to be, necessary to authorize a change in a written contract, solemnly entered into by the parties. This rule is a salutary one; but, like other valuable rules, it is possible to press it too far, and to extend its scope so as to, for all intents and purposes, render it impossible to make the necessary proof.

In the case of *Hope v. Bourland*, 21 Okla. 864, 98 Pac. 580, Mr. Justice Turner quotes with approval sections 707 and 708, Bishop on Contracts, as follows:

"The mistake must, in general, be mutual, and it must be clearly established by the proofs, which may be either oral or written. Indeed, in no case will a court decree an alteration in the terms of a duly executed written contract, unless the proofs are full, clear and decisive. Mere preponderance of the evidence is not enough, and the mistake must appear beyond reasonable controversy."

In that case, as well as in the later case of *Owen et al. v. City of Tulsa*, 27 Okla. 264, 111 Pac. 320, the following excerpt from an opinion of the Supreme Court of the United States in the case of *Hearne v. Marine Insurance Co.*, 20 Wall. 488, 22 L. Ed. 395, has been set out for the proper guidance, and as furnishing the proper rules and the degree of proof necessary in such a situation as this defense presents:

"The reformation of written contracts for fraud or mistake is an ordinary head of equity jurisdiction. The rules which govern the exercise of this power are founded in good sense and are well settled. Where the agreement, as reduced to writing, omits or contains terms or stipulations contrary to the common intention of the parties, the instrument will be corrected so as to make it conform to their real intent. The parties will be placed as they would have stood if the mistake had not occurred. Kerr on Fraud and Mistake, 419, 420. The party alleging the mistake must show exactly in what it consists, and the correction that should be made. The evidence must be such as to leave no reasonable doubt upon the mind of the court as to either of these points. *Beaumont v. Bramley*, 1 Turner & Russell, 41-50; *Marquis of Breadalbane v. Marquis of Chandos*, 2 Mylne & Craig, 711; *Fowler v. Fowler*, 4 De Gex & Jones, 255; *Sells v. Sells*, 1 Drewry & Snales, 42; *Loyd v. Cocker*, 17 Beavan, 144. The mis-

take must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended. *Rooke v. Lord Kinsington,* 2 Kay & Johnson, 753; *Eaton v. Bennett,* 34 Ravan, 196. A mistake on one side may be a ground for rescinding, but not for reforming, a contract. *Mortimer v. Shortall,* 2 Drury & Warren, 372; *Sells v. Sells, supra.* Where the minds of the parties have not met, there is no contract, and hence none to be rectified."

For a valuable discussion of a kindred question, see *Hayden v. Dannenberg,* 42 Okla. 776, 143 Pac. 854.

Coming to the instruction under discussion, we find that, at its close, it sums the degree of proof necessary in the following sentence: "Such evidence must be so full and clear as to leave no room for controversy." If the court had said "as to leave no room for reasonable controversy," it would then have gone to the very limit authorized by the decisions of this court and of the Supreme Court of the United States, as shown above. Proof, establishing a fact so thoroughly as to take it out of the range of controversy, must necessarily be of an exceedingly high order. In fact, such proof could rarely, if ever, be produced. There are cases, however, where the proof could be made so clear and decisive as to establish the fact to a moral certainty, and to leave no room for a reasonable doubt in the minds of men of ordinary intelligence, and yet it would fall short of the standard required in this instruction. On account of this error in presenting the vital issue of the case, we cannot say that no harm was done, for we believe that, under the whole record this phrase very probably was the turning point in the minds of the jury, for the great preponderance of the evidence was in favor of the defendant's contention.

Therefore, for the reason stated, the cause should be reversed and remanded for a new trial.

By the Court: It is so ordered.