## DAVIS v. KEECHE OIL & GAS CO.

No. 11791—Opinion Filed March 27, 1923.

Rehearing Denied May 1, 1923.

(Syllabus.)

**1. Reformation of Instruments—Mistake—Sufficiency of Evidence.**

In order to justify a reformation of a contract, the evidence must be full, clear, unequivocal, and convincing as to mistake and its mutuality. Mere preponderance of the evidence is not enough. The proof must establish the facts to a moral certainty, and take the case out of the range of reasonable controversy.

**2. Appeal and Error—Review of Equity Case—Findings.**

In an equitable action, the findings of fact of the trial court will be sustained, unless they are clearly against the weight of the evidence.

**3. Same—Reformation of Oil Lease.**

The record in this case examined, and held, that the findings and judgment of the trial court are not clearly against the weight of the evidence.

**4. Contracts—Practical Construction.**

Where a contract, or any clause thereof, is uncertain and indefinite, and the parties

thereto, by their subsequent conduct or acts, have construed it, and such construction is within the purview of the language used, the courts will ordinarily adopt as controlling the construction made by the parties themselves.

**5. Oil and Gas—Validity of Lease—Estoppel of Lessor.**

One who, with knowledge of the facts and without objection, suffers another to go upon and drill an oil well on his land under the belief that he has a valid lease thereon, will be estopped to deny the binding force of such lease.

Error from District Court, Caddo County; Will Linn, Judge.

Action by L. A. Davis against the Keeche Oil & Gas Company and another for cancellation of oil lease, etc. Judgment for defendants, and plaintiff appeals. Affirmed,

J. S. Estes, Louis E. McKnight, and W. C. Stevens, for plaintiff in error.

Bond, Melton & Melton, for defendants in error.

NICHOLSON, J. This action was brought by L. A. Davis, as plaintiff, against the Keeche Oil & Gas Company and the Gorton Trust, as defendants, seeking a reformation and cancellation of an oil and gas lease executed by him to the Keeche Oil & Gas Company, and for an accounting for the oil produced from the land covered by said lease.

The material allegations of the petition are, in substance, that on June 5, 1916, the plaintiff executed and delivered to the Keeche Oil & Gas Company an oil and gas lease on 20 acres of land situate in Caddo county, said lease being for a term of two years, and as long thereafter as oil or gas, or either of them, was produced from said land by the lessee. That said lease was executed under the following circumstances: That one F. M. Bailey, the president of the Keeche Oil & Gas Company, acting for and on behalf of said company, and the defendant agreed, prior to the execution of said lease, that said lease should be for a term of two years, and that said company should drill a well upon said land within one year from the date of the lease, but that the company should have the second year of the term of said lease to insure the completion of said well; that Bailey prepared the lease and the same was duly signed and acknowledged by the plaintiff; that Bailey claimed to be in great haste and stated that he did not have time to prepare a copy of the lease for the plain-

tiff, but that he would send plaintiff a copy thereof at a subsequent date; that the second paragraph of said lease reads:

"If no well be commenced on said land on or before the 5th day of June, 1918, this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Bank of Cyril at Cyril, Okla., or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of twenty dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payment or tender the commencement of a well may be further deferred for like period of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers, not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred"

—that the figures and date "1918" was written in said lease by mistake, inadvertence, and oversight of said Bailey and the plaintiff, and that said figures and date should be "1917"; that both parties to said lease understood and agreed that said date should be 1917 and not 1918; that the term of said lease was to be two years from its date and that the same would expire by its own limitation on June 5, 1918; that at no time prior to June 5, 1918, or at any time before the expiration of said lease by its own terms and limitation, did the defendant Keeche Oil & Gas Company, or anyone for it, begin the drilling of a well or do anything toward the commencement of a well on the premises described, nor pay or tender to the plaintiff any sum whatever as delay money for such failure and default; that soon after June 5, 1918, the plaintiff notified the Keeche Oil & Gas Company that said lease was void because of the failure to commence a well or pay the delay money within the life of said lease, and on various occasions thereafter the plaintiff notified the Keeche Oil & Gas Company that said lease was void and that it had no rights thereunder; that, notwithstanding all of said notices, both oral and written, the Keeche Oil & Gas Company, with full knowledge and notice that it had no rights whatever on said land, in April, 1919, cut the fence surrounding said land, took possession of the land, and begun the drilling of an oil well thereon, and completed said well in September, 1919; that such entrance upon the land

and the drilling of said well was without lawful authority and that said plaintiff had at no time consented thereto; that said well produced about 200 barrels of oil per day, which has been by the Keeche Oil & Gas Company sold to the defendant Gorton Trust, and that said Gorton Trust received said oil with full knowledge of the rights of the plaintiff and regardless thereof. The prayer of the petition was that the date 1918, in the second paragraph of the third section of said lease, be decreed to read 1917, that said lease be canceled of record and held void as a cloud upon plaintiff's title to said land, and that defendants be enjoined from claiming any right, title, or interest in and to said land and from trespassing thereon, and that each of said defendants be required to account and pay the plaintiff for all oil produced from said land, and for the appointment of a receiver to take possession of and dispose of any oil then on hand.

The defendant Keeche Oil & Gas Company answered, admitting the execution of the lease on June 5, 1916, but denied that any error or mistake was made therein, and alleged, in substance, that at the time said lease was executed there was no oil production in the Cement field; that the nearest production of oil or gas to the land covered by said lease was 30 or 35 miles; that at such time the defendant in connection with the Oklahoma Star Oil Company was drilling a well in the Cement field known as the Kunsmiller well, and that such well was the only well drilled within several miles of said land; that after the execution and delivery of the lease and in December, 1916, the Kunsmiller well was drilled into an oil sand which produced oil in paying quantities, and as a result thereof other wells were drilled in the Cement field and a productive oil field developed; that plaintiff was well aware of such conditions and knew of all the development in such field and the progress thereof; that the defendant Keeche Oil & Gas Company, under the terms and conditions of said lease, construed the same to mean that the defendant had until June 5, 1918, within which to begin drilling a well upon plaintiff's land without the payment of any rentals, and if the defendant did not begin drilling a well on said land on or before June 5, 1918, it could on or before that day pay to the plaintiff, as provided in said lease, the sum of $20, delay rentals, and thereby extend the time of such lease within which defendant could begin a well for a period of one

year from June 5, 1918, and that if the defendant paid such rentals and began drilling a well on said land on or before June 5, 1919, it would have the right, under said lease, to continue the drilling of said well with reasonable diligence until oil or gas was discovered therein or the well proved to be dry, and if oil or gas was discovered in such well in paying quantities, then such lease would, by and under its terms, continue so long as the defendant produced oil or gas from the land; that in accordance with such construction the defendant did on June 5, 1918, tender to the plaintiff the sum of $20, rentals, under and pursuant to said lease, and also tendered said sum to the Bank of Cyril, in payment of the rent provided for in said lease; that such tender was refused by the plaintiff and, the plaintiff being at such time cashier of the bank of Cyril, such bank also refused to receive the money so tendered; that the plaintiff at that time knew and understood the construction placed upon said lease by the defendant; that on October 22, 1917, long after the Kunsmiller well had been drilled and after the numerous other wells were being drilled in the Cement field, plaintiff filed suit in the district court of Caddo county against the defendant, seeking to cancel said lease on the ground that it had been materially altered after its execution, and wherein he alleged that said lease when executed by him provided that if no well was begun on or before the 5th day of June, 1917, rental should be paid, and that the year 1917 had been changed to read 1918; that prior to the date on which the defendant was required to answer in said cause the plaintiff, with full knowledge of the defendant's contention and construction of said lease, voluntarily dismissed said cause, and by so doing concurred in the construction of said lease contended for by the defendant, and thereby lead the defendant to believe that the plaintiff recognized that such lease contained the agreement of the parties; that no change had been made therein and no errors or omissions had occurred. That, relying on such construction, the defendant in April, 1919, advised the plaintiff that the defendant was ready to drill an oil well on said land, and that the plaintiff at such time advised the defendant, through its officers and agents, J. M. Cook and Crocket English, that he wanted a well on the land and would aid the defendant in every way possible; that the agreement of the plaintiff at such time, and his concurrence in the defendant's en-

tering upon and drilling a well upon said land under said lease, lead the defendant to believe that plaintiff concurred in the construction of said lease contended for by it, and, relying upon the consent of the plaintiff, said defendant purchased material and entered into a contract for the drilling of a well upon said land; that when the material for constructing the rig had been delivered on the land, the defendant went to the plaintiff for the purpose of adjusting the damages to crops on that part of the land where the well was located; that the plaintiff advised the defendant that so far as his part of the crops on said land was concerned he would not require the defendant to pay any damages, but the crop was being made by a negro tenant, and the defendant would have to settle with the tenant for his share of the crop; that the defendant requested the plaintiff to make settlement and adjustment with the tenant for the crops on the land, and defendant would pay the damages so adjusted, and this the plaintiff agreed to do. He accordingly made such adjustment with the tenant, and the damages so agreed upon, in the sum of $40, were paid by the defendant; that afterwards said defendant asked permission of the plaintiff to fence that part of the land on which such well was being drilled in order to protect the crops of the plaintiff and his tenant growing on the land, and the plaintiff made no objection thereto, but consented to the erection of such fence; that the plaintiff continued the drilling operations with reasonable diligence, and continuously until August, 1919, when it brought in a well on said land producing oil in paying quantities and since said time said defendant has continued to produce oil in paying quantities therefrom without objection or protest from the plaintiff: that it expended approximately $50,000 on its operations on said land and that the oil well thereon is of the reasonable value of $100,000, and that such value resulted solely from the efforts of the defendant and the expenditure of money by it.

It was further alleged that the defendant entered upon the land, drilled said well, and expended said money and operated on said land under and pursuant to said lease and the construction thereof contended for by the defendant; that the plaintiff by his acts, conduct, and agreements concurred in the drilling of said well and the production of oil therefrom, and that because of such conduct and agreement the plaintiff waived any and all rights which he might have had to forfeit said lease prior to the completion of said well, and by reason thereof the plaintiff is estopped from seeking to forfeit said lease and taking the value of defendant's money expended thereon for any cause he may have had prior to the completion of said well in August, 1919.

It was further alleged that if for any reason the plaintiff is entitled to forfeit said lease, he is not entitled to recover the oil well thereon until defendant is compensated for all services, money expended, and material used in connection with the drilling and operation of said well.

It was further alleged that the defendant had been damaged in the sum of $25,000, by the acts of the plaintiff in slandering its title. The prayer of this answer was that the plaintiff take nothing, and for judgment for its damages.

To this answer the defendant filed a very lengthy reply, in which, among other things, he pleaded that he never at any time concurred in the construction of said lease placed thereon by the defendant, and that such construction was unjustified. He admitted the tender of rental on June 5, 1918, and alleged that at the time said tender was made he demanded a surrender and cancellation of said lease. He admitted that he filed suit to cancel said lease and afterwards dismissed said suit, but says that a few days after the filing thereof J. M. Cook, acting for the defendant, agreed with the plaintiff that if plaintiff would dismiss said cause, the Keeche Oil & Gas Company would either have a well on the land covered by the lease by June 5, 1918, or on its failure to do so would give up and surrender said lease to the plaintiff, and that this agreement induced him to dismiss said cause.

The defendant Gorton Trust answered, denying each and all the allegations in plaintiff's petition and pleading that it had purchased from the defendant Keeche Oil & Gas Company a large portion of the oil produced from the land in controversy: that it disclaimed any interest in the title to the lease involved, and stood ready to account for all oil received by it from said well to the owner thereof as found by the court.

Upon the issues thus formed, the cause was tried to the court, which trial resulted in a general finding and judgment in favor of the defendant, except that it was denied the damages prayed for, and it is to review this judgment that the plaintiff has appealed.

Numerous assignments of error are presented, but they all relate to the propriety of the judgment and the sufficiency of the evidence to sustain it, and will be considered together.

This being a suit for the reformation of the lease and for cancellation thereof, we must bear in mind the well-established rule that in order to justify reformation of a contract the evidence must be full, clear, unequivocal, and convincing as to the mistake and its mutuality. A preponderance of the evidence is not enough. The proof must establish the fact to a moral certainty, and take the case out of the range of reasonable controversy. Cleveland v. Rankin, 48 Okla. 99, 149 Pac. 1131; Burch v. Staples, 70 Oklahoma, 174 Pac. 271; Forister v. Van Auken (N. D.) 96 N. W. 301; Ordway v. Chace et al. (N. J. Eq.) 42 Atl. 149; 34 Cyc. 915.

It appears from the testimony of the plaintiff that he agreed with F. M. Bailey, president of the Keechc Oil & Gas Company, to give the company a lease for a term of two years, conditioned upon the agreement of the company to begin the drilling of a well within one year from the date of the lease; that Bailey wrote the lease and that the lease as written contained the provision that it should remain in force for a term of two years from its date, and as long thereafter as oil or gas or either of them was produced from the land by the lessee. The lease was dated June 5. 1916; therefore the term would have expired on June 5, 1918, but by a subsequent clause in the lease it was provided that if no well was commenced on said land on or before the 5th day of June, 1918, the lease should terminate as to both parties unless the lessee on or before that date should pay or tender to the lessor or to his credit in the Bank of Cyril the sum of $20, which should operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from that date, etc. That the plaintiff did not discover that the last mentioned clause was contained in the lease until some time after its execution, and when he demanded a surrender of the lease because of the failure of the defendant to pay rental for the second year he was informed by the officers of the defendant that under the terms of the lease no rental was due until June 5, 1918.

F. M. Bailey, the agent of the defendant and the person who negotiated with the plaintiff for the lease, and who wrote the lease, testified that the lease was just as agreed upon between the parties; that it was the agreement that the lease should be for a term of two years with the provision that the defendant might extend the time to begin a well for a period of one year by paying rentals on June 5, 1918. He testified, in effect, that the plaintiff agreed to give the defendant a lease for two years with the option of continuing it for another year by the payment of rental at the expiration of the two-year period, and that he wrote the last-mentioned clause in the lease for the purpose of complying with the terms of this agreement.

The only material difference between the plaintiff and Bailey pertaining to the terms of the lease is with reference to the date "1918" written in the lease. The plaintiff claimed that this date should have been 1917, while Bailey insisted that the lease as drawn embodied the agreement of the parties.

A careful examination of the record convinces us that the plaintiff has failed to sustain the burden cast upon him of establishing by full, clear, unequivocal, and convincing evidence that the mistake, if any, was mutual. If a mistake occurred, it was, in our opinion, occasioned by the plaintiff's negligence in failing to read the lease before executing it, and under these circumstances a reformation will not be decreed. 34 Cyc. 936.

Plaintiff in error next contends that, even though the judgment of the trial court is not against the clear weight of the evidence and under the facts a reformation of the lease was properly denied, yet he ought to have prevailed because the lease shows upon its face that it had expired before the defendant entered upon the land and began drilling thereon.

This contention presents some very interesting legal propositions which, in our opinion, it is unnecessary here to decide because of the acts and conduct of the parties subsequent to the execution of the lease, and subsequent to the time the controversy over the terms thereof arose.

It appears that the defendant at all times contended that under the terms of the lease it could defer the commencement of a well for one year after June 5, 1918, by paying the stipulated rental; that the plaintiff learned of this contention in October, 1917, at which time he insisted that the lease had been altered after its execution and, in fact, brought suit to cancel it for that reason, which suit he dismissed without prejudice; that upon an examination of the lease, he learned that the same had not

been altered, but was in the same condition as when signed by him; that on June 5, 1918, no well having been started, the defendant tendered to the plaintiff the rental provided for in the lease, which he refused to accept. Afterwards, and in April, 1919, J. M. Crook, the president, and T. C. English, vice president of the defendant, and the plaintiff had a conversation on the land in controversy, in which, according to the testimony of Crook and English, Crook stated to the plaintiff that the defendant was then ready to commence drilling a well on the lease, and the plaintiff replied that he was glad to hear it, and that he would do anything he could to help it along; that Crook then said that he observed that the land where they wanted to drill had been plowed and under their contract they were responsible for damages to crops, and they wanted to settle these damages then; that the plaintiff replied that he only owned half of the crop, and that the tenant owned the other half; that, so far as the plaintiff's half was concerned, they owed him no damages, but that they would have to settle with the tenant for his share of the crop, that thereupon English requested the plaintiff to negotiate a settlement with the tenant; that the plaintiff at first demurred to this, but afterwards agreed to see the tenant and settle with him at $10 per acre for his proportion of the crop, and this settlement was made and the damages paid by the defendant. That at the time of this conversation the plaintiff understood the contention of the defendant that it had a right to defer the commencement of a well on the land for one year after June 5, 1918, by the payment of rentals, and that Crook believed in good faith that the defendant had a valid right under the lease to begin drilling a well on the land at any time before June 5, 1919; that, relying on this construction of the lease and on the conversation had with the plaintiff, the defendant began drilling a well on the land: that afterwards the defendant obtained permission of the plaintiff to fence the land occupied by it in its operations; that the plaintiff made no objection to the progress of the work, but after a well had been brought in he proposed to the defendant that he would settle with it by taking $10,000 cash and 1-8 of the oil, or 1-4 of the oil and another well.

It further appears from the testimony on behalf of the defendant that at the time of the conversation in April, 1919, the plaintiff knew of the construction placed upon the lease by the defendant, and that

the defendant knew the contention of the plaintiff; that Crook and English went to the plaintiff for the purpose of ascertaining whether or not he would consent for the defendant to drill a well on the land under its lease as construed by it, and the plaintiff knew this was the purpose of the conversation; that he gave his consent, and the defendant went upon the land and drilled the well in good faith, believing that the construction of the lease contended for gave it the right to do so, and believing that the plaintiff consented to such construction.

The plaintiff practically admits that he agreed with Crook and English to see the tenant and negotiate a settlement of the damages to crops, and that he knew the construction placed upon the lease by the defendant, and that he did not at the time of this conversation object to the defendant drilling upon the land.

While there are, in many instances, sharp conflicts in the evidence, the trial court found generally for the defendant, and this carried with it the finding that the defendant took possession of the land and drilled the well with the consent of the plaintiff, and an examination of the record satisfies us that this finding is not against the clear weight of the evidence, and this being an equitable action, the findings of the trial court should be sustained unless it appears that they are clearly against the weight of the evidence. Prowant v. Sealy, 77 Okla. 244, 187 Pac. 235, and cases there cited.

The language of the lease is ambiguous The plaintiff contended that the lease expired on June 5, 1918, while the defendant contended that it could, by paying rental, extend the time within which it might commence a well under the lease until June 5, 1919, and under this contention it tendered rental on June 5, 1918. Before entering upon the land and drilling the well, it sought and obtained the permission of the plaintiff to do so, and relying upon the conduct of the plaintiff, the well was drilled. Under these circumstances, should the plaintiff be permitted to cancel the lease and take from the defendant the well drilled by it? We think not.

The doctrine is well settled that where a contract, or any clause thereof, is uncertain and indefinite, and the parties thereto by their subsequent conduct and actions have construed it, and such construction is within the purview of the language used, the courts will ordinarily adopt as controlling the construction made by the parties themselves. Prowant v. Sealy, supra; Wie-

bener et al. v. Peoples, 44 Okla. 32, 142 Pac. 1036.

It is true that the plaintiff contended for a different construction than that claimed by the defendant, but when the defendant, relying upon its construction, proposed to drill a well under the lease, and the plaintiff consented and agreed thereto, he must be held to have concurred in defendant's construction of the lease, and whether or not that construction was correct, he ought not now be permitted to repudiate it, and take from the defendant the fruits of its efforts. Had he not in his conversation with Crook and English lent encouragement to the beginning of a well by the defendant, doubtless the defendant would not have entered upon the land, would not have expended its money in drilling a well, and plaintiff's land would have remained undeveloped.

The plaintiff by his conduct lead the defendant to believe that he concurred in the construction of the lease contended for by it, and, acting upon such belief, the defendant expended its money in developing the property, and the plaintiff by his acts and conduct is now estopped to deny the binding force of the lease. 16 Cyc. 765, and cases there cited.

The judgment of the trial court is affirmed.

JOHNSON, C. J., and McNEILL, KENNAMER, COCHRAN, and BRANSON, JJ., concur.