**R. L. MATLOCK and Dorothy Matlock,
Plaintiffs in Error,**

v.

**W. W. WHEELER and Estelle Wheeler,
Defendants in Error.**

No. 36819.

Supreme Court of Oklahoma.

Feb. 28, 1956.

Rehearing Denied Jan. 8, 1957.

Application for Leave to File Second Petition for Rehearing Denied Feb. 5, 1957.

**326**

Goode, Goode & Henson, Kenneth B. Kienzle, Shawnee, for plaintiffs in error.

Randall Pitman, Shawnee, for defendants in error.

PER CURIAM.

The parties occupy the same relative position as in the trial court, and will be referred to herein as they there appeared.

On July 28, 1952 defendants entered into a written contract to sell to plaintiffs the surface only of a tract of land in Pottawatomie County, Oklahoma. The consideration therefor was $21,000 payable $6,000 escrowed in the First State Bank of Lexington, Oklahoma, the balance in annual installments of $1,000 each to be evidenced by a note and mortgage, said note to run for a period of 10 years and 2 years additional to be granted if needed. Defendants were to furnish abstracts of title to date and plaintiffs were to have 15 days after receipt thereof to examine and furnish title requirements; defendants were to then have a reasonable time to meet title requirements. Plaintiffs to have possession upon approval of title. Warranty deeds were executed and filed with copy of the agreement.

On May 21, 1953 plaintiffs, then being in possession of the property and living thereon, filed their petition in the District Court of Pottawatomie County against said defendants and the First State Bank of Lexington, Oklahoma, alleging the execution of the contract, the escrow of the sum of $6,000, failure of defendants to furnish them with marketable title within a reasonable time, praying for cancellation of the contract, the return of the escrow payment and damages.

The bank paid what money it had on hand into the court and the case was dismissed as to it.

Defendants filed an answer and cross-petition in which they admitted execution of the sales contract, denied that they had violated any of its terms and, among other things, alleged that they had furnished or tendered abstracts of title showing merchantable title to said property; that the sales contract contained certain mistakes therein and made prayer for reformation of the contract to correct such mistakes and

for specific performance of such corrected contract.

The court denied plaintiffs' demand for a jury trial and at the close of all the testimony rendered judgment in favor of the defendants.

The plaintiffs have appealed and in their brief first contend that the court erred in concluding as a matter of law that the pipe line easements on the property of defendants did not constitute a defect in defendants' title, and holding that the plaintiffs waived any objections or complaint that they might have had to the title on account of the pipe line easements.

On July 28, 1952, the defendants were the owners of the land involved herein. Theretofore the plaintiffs had gone to Pottawatomie County in search of land suitable to them which they might purchase. They contacted defendants and made a physical inspection of said land. Some of the pipe lines now complained of were open and visible to the eye. On the above date plaintiffs and defendants went to the First State Bank of Lexington, where they entered into the above referred to contract of sale. Under this contract no specific objections were made by plaintiffs to pipe line encumbrances. Thereafter defendants furnished plaintiffs abstracts of title which plaintiffs took to an attorney in Lawton for examination. This attorney on August 10, 1952 made written opinions to plaintiffs based on said abstracts and while such opinions contained certain objections and requirements made thereon, it is noted that mention was made as to pipe line easements with no requirements concerning same. Upon receipt of said title opinions plaintiffs brought them to defendants who took them to their attorney in Shawnee to bring such action as might be necessary to meet the title requirements called for. While such action was pending and on September 15, 1952, defendants moved from the premises and notified plaintiffs they could take possession. On or about October 1, 1952, plaintiffs began to move some of their property including stock to the premises, and on October 22, 1952, plain-

tiffs and defendants went to the bank and there plaintiffs released $2,000 of the money in escrow for payment to defendants. On February 13, 1953 judgment was taken in the quiet title action and after being placed in the abstracts such abstracts were delivered to plaintiffs' counsel. On April 2, 1953, plaintiffs' counsel rendered to plaintiffs his supplemental opinions making further requirements and in said supplemental opinions again noted the pipe line easements. On May 6, 1953, after plaintiffs had brought the abstracts and supplemental opinions to defendants another quiet title action was brought and judgment was taken thereon on June 30, 1953. Such quiet title suit was placed in the abstracts of title and on July 6, 1953, said abstracts tendered to plaintiffs and their counsel. After plaintiffs took possession of the premises they paid ½ the 1952 taxes and collected the sum of $30 damages from a seismograph company doing exploration work on said premises. They began this action on May 20, 1953 to cancel the contract and moved from the premises on May 30, 1953.

Under the plaintiffs' contention the real question involved is whether the pipe line easements are such encumbrances that, under all the circumstances, the existence thereof, are such defect in defendants' title as to constitute a breach of the conditions of the sales contract. Plaintiffs argue that the presence of the pipe line easements prevented defendants from being able to tender a merchantable title. In support thereof they cite our attention to Porter v. Ridge, 310 Mich. 425, 17 N.W.2d 239, wherein it was held:

"An easement for oil pipe line and telegraph or telephone lines was an 'incumbrance' which prevented purchaser of land from obtaining 'merchantable title' within land contract requiring conveyance of merchantable title."

And Thackeray v. Knight, 57 Utah 21, 192 P. 263, and cases from other jurisdictions of like import, all holding that where a contract contemplated title free from encum-

brance an easement for pipe line over the premises is an encumbrance.

It is to be noted in the cases cited by plaintiffs there was a definite requirement of warranty of merchantable title or a title free from all encumbrances in the contracts or in the deeds executed. The question now before us seems never to have been decided by this Court.

■ The courts are unanimous in holding that where an encumbrance touches the title a purchaser's knowledge of it is no answer to an action for breach of covenant. We concede this to be the general rule. However, there is a definite conflict in the authorities as to the effect of the purchaser's knowledge on his action for breach of covenant, where the encumbrance affects the physical condition of the land. Where such is an exception to the general rule the reason therefor is that the encumbrance being open, visible and notorious, the parties are supposed to have contracted with reference to it.

While we are in full accord with the general rule, we think a distinction must be made where the encumbrance is a physical one, open to the view of the purchaser, and which, from the very nature of the case, is a continuous easement or servitude. Having so concluded we cannot presume that a vendor of land would make a contract of sale of such land, therein warrant against an encumbrance which is plainly visible upon the land, and which, from its very nature, cannot be removed. Nor can we presume that the plaintiffs herein would make purchase upon the belief that the defendants were to remove the encumbrance which under the law, known to each, the defendants had no right to remove or which was incapable of being removed. So we are committed to the presumption that the plaintiffs and defendants would not make a contract of sale and purchase of land which was broken the instant it was entered into.

In 91 C.J.S., Vendor & Purchaser, § 161(1), the rule is stated as follows:

"In the absence of fraud or misrepresentation the purchaser cannot rescind for want of, or defect in, title existing at the time of the sale where he knew or should have known thereof and made no objections. Knowledge of the existence of the encumbrance and of its general nature charges the purchaser with knowledge of its contents, terms, and conditions within the meaning of this rule; * * *."

■ Where, as in the case at bar, the encumbrance affects the physical condition of the property, is an open, notorious easement of which it is the servient tenement, the plaintiffs must be presumed to have seen it, and to have fixed their price with reference to the actual condition of the land at the time they entered into the contract, and in the absence of specific objection, such encumbrance is not such defect in defendants' title as to be a breach of the contract of sale to entitle plaintiffs to a rescission of the contract.

Plaintiffs next contend that the court erred in granting reformation of the contract so as to provide for the balance of the contract at the rate of $1,500 per year and to provide for the payment of interest.

In support thereof they call our attention to Burch v. Staples, 70 Okl. 245, 174 P. 271; Home Ins. Co. v. Akers, 96 Okl. 232, 221 P. 493, and Davis v. Keeche Oil & Gas Co., 89 Okl. 226, 214 P. 711, all holding that:

"In order to justify a reformation of a contract, the evidence must be full, clear, and unequivocal, and convincing as to the mistake of its mutuality. Mere preponderance of evidence is not enough. The proof must establish the facts to a moral certainty, and take the case out of the range of reasonable controversy."

■ In Burch v. Staples, supra, quoting the above rule, this court followed the earlier case of Cleveland v. Rankin, 48 Okl. 99, 149 P. 1131 wherein it was held:

"Where an agreement, as reduced to writing by a scrivener, omits or contains terms or stipulations contrary to the common intention of the parties, the instrument will be corrected, so as to make it conform to their real intent, to the end that the parties be placed as they would have stood, if the mistake had not occurred. But in such case the party alleging the mistake must show exactly in what it consists and the exact correction to be made; that the mistake was mutual or common to both parties (that is, it must appear that both have done what neither intended). On the point, and to justify a correction, the evidence must be full, clear, unequivocal, and convincing as to the mistake and its mutuality. Mere preponderance of evidence is not enough. The proof must establish the facts to a moral certainty and take the case out of the range of reasonable controversy; but it need not be so certain as to go beyond any possibility of controversy."

■ After a careful review of the record in the instant case and considering the facts therein within the rule above stated, this court cannot say that the judgment of the trial court is clearly against the weight of the evidence, especially since the evidence is conflicting and the trial court having had the witnesses before it, having had the opportunity to observe their demeanor and to determine their credibility, decided this issue favorably to the defendants.

■ Plaintiffs next contend that the trial court erred in denying them a jury trial.

We cannot agree with this contention. It is well established that the right to jury trial is determined by character of the action and of the issues framed by the pleadings of the parties. See Brewer v. Baker, Okl., 283 P.2d 203, and cases therein cited.

Complaint is also made that the court erred in finding and holding that the defendants met the title requirements made by the attorney for plaintiffs and furnished merchantable title within a reasonable time.

From that portion of the contract pertinent to this contention it is apparent that defendants were to furnish abstracts of title to the property contracted to be conveyed to plaintiffs, that plaintiffs were to have 15 days after receipt of same to examine and furnish title requirements and defendants were to have a reasonable time in which to meet such title requirements.

The record discloses that the property herein involved was covered by six separate abstracts of title, that after plaintiffs' counsel made examination of same he wrote separate opinions covering said abstracts making numerous requirements, necessary in his judgment to the perfection of the title. Some delay occurred from the time defendants furnished their attorney with the opinions before quiet title suit was commenced. Reputable attorneys testified that such delay under the circumstances was reasonable. Further delay was experienced by reason of the further requirements which necessitated a new and additional quiet title action which was completed and had been tendered to plaintiffs at the time of trial herein. The marketability of title is not argued at this time with the exception as to pipe line easements with which we have heretofore dealt.

■ The only other question before us is whether defendants should be charged with failure to deliver such title within a reasonable time. We think not. The decision of the courts are uniform that time is never the essence of the contract unless by its terms it is expressly so provided. Strain v. Statler, 112 Okl. 233, 240 P. 614.

The author of 81 C.J.S., Specific Performance, § 109, Subd. b (3), states the rule as follows:

"Where time is not of the essence of the contract, it is sufficient that the vendor * * * perfects his title * * * at the time of the trial or hearing, or at the time of the decree.'"

■ Since time is not of the essence of the contract herein, no rule with respect to

**330**

the length of the delay which will be fatal to relief can be laid down, but each case must depend on its peculiar circumstances. Under the factual situation heretofore stated and as set forth by the record we cannot charge defendants with an unreasonable delay in meeting title requirements of plaintiffs.

Plaintiffs cite the case of McDennis v. Finch, 1916, 197 Ala. 76, 72 So. 352, which sets forth the rule to the effect that if defects in title are pointed out by the vendee and the vendor submits the evidence of title without curing such defects, he is not entitled to additional time for such purpose.

We have no controversy with this rule of law where the factual situation applies, and, had plaintiffs upon delivery of the supplemental opinions to defendants tendered possession of the property their arguments thereunder would be most persuasive, but, in view of the fact that plaintiffs retained possession of the premises, were in such possession at the time they instituted this action, and were in such possession at the time defendants began new quiet title suit in their continuing efforts to meet plaintiffs' title requirements, this case falls within a different rule, and in accord with the rule announced in Strain v. Statler, supra.

The judgment is in all matters affirmed.

JOHNSON, C. J., and CORN, DAVISON, HALLEY, BLACKBIRD, JACKSON and HUNT, JJ., concur.

WILLIAMS, V. C. J., and WELCH, J., dissent.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner Reed and approved by Commissioners Nease and Crawford, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.