405 P.2d 993 (1965)
Leah DENNIS and E.V. Dennis, Plaintiffs in Error,
v.
AMERICAN-FIRST TITLE AND TRUST COMPANY, a corporation, Melvin Hatley, individually and d/b/a Melvin Hatley Co., W.M. Hamilton, a/k/a Bill Hamilton, W. E. Hatley, and Ranchwood Hills Development Co., a corporation, Defendants in Error.
No. 40688.
Supreme Court of Oklahoma.
September 14, 1965.
Kerr, Davis, Roberts, Heimann, Burbage & Irvine, by W. Walter Hentz, Oklahoma City, for plaintiffs in error.
Caldwell & Warren, by Robert H. Warren, Oklahoma City, for defendants in error.
*994 HALLEY, Chief Justice.
This is an appeal from a judgment of the District Court of Oklahoma County in favor of the defendants in error, denying plaintiffs in error relief in their equitable action for reformation of a written contract of sale of real estate. The parties occupy the same relative positions here as in the trial court, and will be referred to herein as they there appeared or by name.
Plaintiffs (E.V. Dennis and his wife, Leah Dennis), in their petition, alleged in substance that they were formerly the owners of a quarter section of land in Cleveland County; that on March 5, 1962, they entered into a written contract to sell the property to the defendants, Melvin Hatley and W.E. Hatley; and that at the time of closing the sale, Melvin Hatley and W.E. Hatley took title to the property in the name of the defendant, Ranchwood Hills Development Co. Plaintiffs further alleged that a copy of the contract was placed in escrow with the defendant, American-First Title and Trust Company, together with the purchasers' down payment of $15,000. That the down payment was to be delivered to plaintiffs at the time of closing the sale, but that Melvin Hatley and W.M. Hamilton entered a claim against plaintiffs at that time for a real estate commission of $12,000 and the escrow agent refused to deliver the down payment to plaintiffs. It was further alleged that the *995 real and true agreement between the parties was that the buyers were to pay any real estate commission that might be due the defendants, Melvin Hatley Company or W.M. Hamilton, from the sale of the realty, but that through a scrivener's error the contract recited that the sellers were to pay the commission. That the contract as executed does not reflect the true intention and agreement of the parties and should be reformed.
Defendants' answers, in addition to general denials, alleged that the contract of sale as written expressed the true and correct intention and agreement of the parties and denied any mistake in connection therewith. The escrow agent alleged that it was simply a "stakeholder" and awaited the order of the court as to disposition of the contracts and proceeds thereunder.
The case was tried to the court, who at the close of all the testimony rendered judgment in favor of the defendants. From this judgment and the overruling of their motion for new trial, plaintiffs appeal. It is first contended by plaintiffs in their brief that "The evidence clearly shows that the provision in the final contract, `seller further agrees to pay any real estate commission that might be due Melvin Hatley Company or Bill Hamilton,' was contrary to the prior agreement of the parties and was a scrivener's error." This proposition requires an analysis of the evidence.
The defendant, W.M. Hamilton, came to E.V. Dennis' office in the early part of 1962, and inquired if plaintiffs had any real estate for sale which would be suitable for development. E.V. Dennis furnished him with a list of properties in which he though Hamilton might be interested, including therein that quarter section of land involved herein. Hamilton later returned to E.V. Dennis' office and submitted Melvin Hatley's written offer, dated February 20, 1962, to purchase the above described quarter section for $160,000. The offer was on a printed Uniform Purchase Contract of the Melvin Hatley Company and contained no provision for the payment of a real estate commission. A clause at the bottom of the printed form, which provided for payment of a real estate commission to the Melvin Hatley Company by the sellers, was deleted. E.V. Dennis rejected the offer, but advised Hamilton that he would sell the quarter section for $250,000.
Hamilton thereafter presented a second written offer, dated March 1, 1962, to E.V. Dennis to purchase the surface and one-half (½) of the minerals in the said quarter section for $240,000. It was on the same printed form as the first offer, but signed by Melvin Hatley's father, W.E. Hatley, as the purchaser. The clause at the bottom of the printed form, which was left intact, provided that "The * * * owners of the above described property * * * agree to * * * pay the Melvin Hatley Co. the regular commission as recommended by the Oklahoma City Real Estate Board." W.E. Hatley's offer was also rejected by E.V. Dennis. E.V. Dennis testified that he "told Hamilton he would take $240,000 for the place if he would forget his commission." That Hamilton then asked, "`Who will take care of that if you don't.'" That E.V. Dennis then said, "I imagine Hatleys will take care of it", and that Hamilton "made no further comment, whatsoever."
Hamilton submitted a third written offer to E.V. Dennis, dated March 2, 1962, to purchase the same interest in the quarter section as set out in the second offer. It was also on the same printed form as the first two offers, and was signed by W.E. Hatley, as the purchaser. It provided for a consideration of $240,000, $10,000 down (to be held in escrow until closing), $5,000 additional at closing, and the balance in ten equal installments with interest to start one year from possession at 3% per annum for the second year and 6% per annum thereafter until paid. Rent was to be adjusted and possession given on the date of closing. The clause at the bottom of the printed form, which provided for the payment *996 of a real estate commission to Melvin Hatley Company by the sellers, was deleted. The offer contained no other provision for the payment of a real estate commission.
E.V. Dennis testified he first talked with W.E. Hatley in the early morning of March 5, 1962, when the defendants, W.M. Hamilton and W.E. Hatleys came to his office to discuss W.E. Hatley's previous offer of March 2, 1962, and that "I accepted the offer with a few minor changes." It was admitted by E.V. Dennis on cross-examination that nothing was said at that time about the payment of a real estate commission, and that no mention was ever made of the same thereafter until the date of closing on April 4, 1962. He further testified on cross-examination as follows concerning W.E. Hatley's offer of March 2, 1962:
"Q. Then I asked you this, `Did you accept their offer,' and here is your answer, `It was the basis for an offer I made Bill Hamilton,' was that your answer?
"A. Yes, sir, it probably was.
"Q. You took this and then you made a new offer which you subsequently gave to Mr. Hamilton to give to the Hatleys?
"A. That is right."
E.V. Dennis further testified that he gave W.E. Hatley's offer of March 2, 1962, to his attorney son, Frank Dennis, between 10:30 a.m. and 11:00 a.m. on March 5, 1962, immediately following the above described conference, and asked him "to follow this contract and draw an original contract." Frank Dennis drafted the contract in controversy. It was dated March 5, 1962, and contained substantially the same provision as were in W.E. Hatley's offer of March 2, 1962, with the exceptions that both Melvin Hatley and W.E. Hatley agreed therein to purchase the quarter section, the interest was to start one year from the date of closing, possession was to be given on closing subject to any existing agricultural lease, and the rent therefrom for the year 1962 was to be retained by the sellers. It also contained the following additional provision:
"The buyer agreed to pay all escrow charges and closing expenses. Seller further agreed to pay any real estate commission that might be due Melvin Hatley Company or Bill Hamilton."
It was the further testimony of E.V. Dennis that Hamilton picked up the contract, drafted by Frank Dennis, from E.V. Dennis' office on March 5, 1962, between 12:00 Noon and 12:30 p. m., and that he thereafter returned the contract after it had been executed by Melvin Hatley and W.E. Hatley to E.V. Dennis' home on the same day at approximately 7:30 p.m., where it was then executed by the plaintiffs. E.V. Dennis testified further that the contract, drafted by Frank Dennis, failed to conform to the agreement of the parties in that it provided for payment of a real estate commission by the sellers instead of payment by the buyers, and that he did not discover the mistake in the contract until after the deed, note and mortgage had been executed and delivered at the closing on April 4, 1962. Frank Dennis' testimony corroborated the testimony of his father, E.V. Dennis.
W.M. Hamilton testified that E.V. Dennis rejected W.E. Hatley's written offer of March 2, 1962, but that "he told me he would keep this and draw up his own contract from it and would let me know when he had it ready for me." That he thereafter picked up the contract, drafted by Frank Dennis, from E.V. Dennis' office on March 5, 1962, between 11:00 a.m. and 11:30 a.m., and took it to his office for review by W.E. Hatley. That W.E. Hatley discussed the contract over the telephone with his son, Melvin Hatley, who was then hospitalized at the Baptist Hospital. W.M. Hamilton testified further that he returned, in company with W.E. Hatley, to E.V. Dennis' office on the same day after lunch to discuss the contract with E.V. Dennis, but that nothing was said at that time about the payment of a real estate *997 commission. That thereafter, he and W.E. Hatley returned to his office and from there went to the Baptist Hospital at about 4:00 p.m. or 5:00 p. m. on the same afternoon, where the contract, drafted by Frank Dennis, was accepted and executed by both Melvin Hatley and W.E. Hatley. That he then took the contract to E.V. Dennis' home that same night at approximately 7:30 p.m., where it was then signed by E.V. Dennis and his wife, Leach Dennis.
W.M. Hamilton's testimony was corroborated by the testimony of W.E. Hatley. Melvin Hatley testified that he made a written offer to purchase the said quarter section from plaintiffs on February 20, 1962, but that the same was rejected by E.V. Dennis. That the next instrument he saw in regard to the sale was the contract, drafted by Frank Dennis, which he executed on March 5, 1962. That he had no specific knowledge of the contents of W.E. Hatley's offer of March 1 and March 2, 1962, until shortly before trial, and that he and his father, W.E. Hatley, did not operated as a general partnership at those times.
The general rule is stated in 76 C.J.S. Reformation of Instruments § 18, as follows:
"There can be no reformation unless there is a preliminary agreement, a prior contract, either written or verbal, by which to make the rectification, or to which the instrument can be conformed. The minds of the parties must have met in a contract, because if they did not, there is no contract and, hence, none to be rectified. There must have been a definite agreement, a common assent to the same thing, a valid agreement sufficiently expressing or embodying the real intent of the parties, which the written instrument, when reformed, will express; * * *. If no contract was ever made concerning the matter about which a mistake is claimed, there can be no reformation. * * *"
In the second paragraph of the syllabus in Tuloma Pipe & Supply Co. v. Townsend, 182 Okl. 321, 77 P.2d 535, we used this language:
"`Relief, by way of reformation of written instruments which may be had under proper circumstances in a court of equity is limited to making the writing speak the former agreement of the parties, and the court cannot make a new or different contract for the parties.' Douglas v. Douglas, 176 Okl. 378, 56 P.2d 362."
It is also a well-established rule of this Court that in order to justify a reformation of a written contract, the proof must be full, clear and unequivocal and sufficiently convincing to establish the facts to a moral certainty. Haggard v. Calhoun, Okl., 294 P.2d 836; Matlock v. Wheeler, Okl., 306 P.2d 325; American Motorists Insurance Company v. Biggs, Okl., 380 P.2d 950.
In Matlock v. Wheeler, supra, citing the above rule, this Court followed the earlier case of Cleveland v. Rankin, 48 Okl. 99, 149 P. 1131, wherein it was held:
"Where an agreement, as reduced to writing by a scrivener, omits or contains terms or stipulations contrary to the common intention of the parties, the instrument will be corrected, so as to make it conform to their real intent, to the end that the parties be placed as they would have stood, if the mistake had not occurred. But in such case the party alleging the mistake must show exactly in what it consists and the exact correction to be made; that the mistake was mutual or common to both parties (that is, it must appear that both have done what neither intended). On the point, and to justify a correction, the evidence must be full, clear, unequivocal, and convincing as to the mistake and its mutuality. Mere preponderance of evidence is not enough. The proof must establish the facts to a moral certainty and take the case out of the range of reasonable *998 controversy; but it need not be so certain as to go beyond any possibility of controversy."
We have examined all the evidence and feel convinced that when it is considered in connection with all the circumstances and conditions surrounding the case, it is insufficient to meet the above-stated requirements to justify the reformation of a written contract. It was undisputed that Melvin Hatley's written offer of February 20, 1962, and W.E. Hatley's written offer of March 1, 1962, were both rejected by the plaintiff, E.V. Dennis. There was a complete lack of evidence of an agreement between the parties prior to March 5, 1962, and nothing was said at that time, or thereafter, about the payment of a real estate commission until the date of closing. Although there was a conflict in the testimony as to whether E.V. Dennis accepted W.E. Hatley's offer of March 2, 1962, the final contract drafted for the plaintiffs by Frank Dennis on March 5, 1962, constituted a counter proposal and a rejection of W.E. Hatley's offer of March 2, 1962. Plaintiffs' counter proposal of March 5, 1962, was accepted by both Melvin Hatley and W.E. Hatley, and provided that plaintiffs were to pay the real estate commission. Since no prior agreement, either written or verbal, was made between the parties concerning the payment of a real estate commission, there can be no reformation of the contract in controversy. See O'Neal v. Harper, 182 Okl. 52, 75 P.2d 879.
Plaintiffs further contend:
"2. A court of equity can correct a scrivener's error, although, strictly speaking, it is a unilateral mistake.
"3. Plaintiffs' failure to read the written contract carefully does not constitute such negligence as will bar reformation particularly where plaintiffs relied upon an attorney to draw the contract."
Our determination of plaintiffs' first proposition in favor of the defendants is decisive in this case, and makes it unnecessary for this Court to consider plaintiffs' other two propositions, which are covered by the first proposition. The judgment of the trial court is affirmed.
DAVISON, WILLIAMS, BLACKBIRD, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.
JACKSON, V.C.J., concurs in result.