Claud DAVENPORT and Lucille Davenport, husband and wife, Appellants,

v.

Rosa BECK, Winona Holliday, Clifford Holliday, and the unknown successors of W. H. Beck, Deceased, Appellees.

No. 50383.

Court of Appeals of Oklahoma, Division No. 2.

Sept. 6, 1977.

Released for Publication by Order of Court of Appeals Sept. 29, 1977.

---

7. However, should such a problem arise in the future we refer the parties to 12 O.S.1971 § 318 for guidance.

Robert G. Grove, Oklahoma City, for appellants.

Robert R. Schick, Oklahoma City, Robert H. Sherman, Oklahoma City, for appellees.

BRIGHTMIRE, Presiding Judge.

Plaintiffs seek review of a decree reforming a note and adjudging that there is due thereon the sum of $7,318.68.

## I

On September 21, 1964 plaintiffs contracted with defendants for the purchase of an Oklahoma City, Oklahoma lot for $13,-500. Under the terms of the sale plaintiffs were to take the property under "a contract for deed," pay "$100 per month at 6% interest included," and build a house on the land. As soon as 10 payments were made defendants agreed to convey the property to plaintiffs "and take a first mortgage for the unpaid balance to be liquidated by continued payments as above."

Plaintiffs went into possession of the lot and performed as agreed. On October 15, 1964 they evidently received a deed to the property because they executed a promissory note and a securing mortgage in favor of defendants. The note reads:

"For value received we promise to pay Thirteen Thousand Five Hundred Dollars or order [sic] the sum of _____ Dollars at Oklahoma City in 135 installments payable as follows, to-wit: 100.00 (One Hundred) Dollars on the 1st day of November 1964, and One Hundred (100.00) Dollars on the 1st day of each succeeding Month thereafter, up to and including the 1st day of last month, [sic] and none Dollars on the _____, with interest from Nov. 1964 until paid at the rate of 6% per cent. [sic] per month, included in each payment. The interest on each installment, and the interest on the unpaid balance of the principal sum are to be paid at the maturity of each installment. If default is made in the payment of any installment when due, then all the remaining installments shall become due and payable at once."

The accompanying mortgage recited that it was to secure a note "made to Rosa Beck, W. H. Beck, Winona Smith (now Holliday) and Clifford Holliday, Okla. City with 6% per cent. [sic] interest per annum from date, payable monthly and signed by first part parties."

After these instruments were executed plaintiffs began paying $100 a month to defendants. On January 5, 1976 Claud Davenport wrote defendants:

"Attached please find our check # 135 in the amount of $100.00. In accordance with a note and mortgage dated October 15, 1964, this check represents the one hundred thirty fifth and final payment on the above mentioned note.

"I would like to request that a release on the property covered by the above mentioned mortgage be signed by all parties and forwarded to me as soon as possible."

Defendants declined to execute a release and so plaintiffs filed this action two weeks later asking the court to quiet their title against the mortgagees and grant a penal judgment of $135 a day against defendants beginning January 16, 1976 until they released the mortgage as authorized by 46 O.S.1971 § 15.

## II

In their answer defendants denied the note was fully paid and by cross-petition alleged that a clerical error was made in

preparing the note in that it should have called for 226 payments instead of 135. Consequently they asked the court to reform the note accordingly and give them a judgment for $7,318.68 against plaintiffs.

At a pretrial conference held October 7, 1976 the parties waived identification of various exhibits including the contract of sale, note, mortgage and plaintiffs' letter requesting the mortgage release. "The court finds," wrote the judge on the conference order, "there is no issue as to any material fact. Both parties may submit briefs. Case is set for trial (non jury) on the 3rd day of November, 1976, at 3:00 P. M."

Nevertheless on October 28, 1976 defendants filed what they called an "Offer of Evidence." In it they asked the court to consider certain additional evidence bearing on the true intent of the parties, namely: (1) a copy of the contract of sale; (2) an amortization schedule; (3) plaintiffs' "hand written correspondence where [they] calculated interest on the Note in making [their] monthly $100.00 payments"; (4) defendants' tax records for the years 1965–71; (5) appraiser's report showing value of property to be $16,000 on the date of its sale to plaintiffs.

On November 3rd the parties appeared for trial at which time the court adjudicated the case by denying plaintiffs the relief they requested, reforming the note by deleting the number 135 therefrom, and decreeing that there remained a balance due on the note in the amount of $7,318.68 to be paid at the rate of $100 a month.

It is from this judgment that plaintiffs appeal condemning it as a premature conclusion reached "without hearing evidence," and ask for "a reversal of the trial court with direction . . . to enter judgment for [plaintiffs] on the pleadings."

### III

Plaintiffs say that in seeking reformation of the note it was necessary for defendants to plead that a mutual mistake had been made by the parties and that the "mere allegation that a clerical error was made,

without more, cannot support a cause of action for reformation because it does not speak to the critical issue of whether the note reflected the intentions of either of the parties." Since there is no mutual mistake allegation, continue plaintiffs, defendants have stated no cause of action and therefore could not have been entitled to judgment. Cited as supporting authority for the contention is *Dennis v. American-First Title & Trust Co.,* Okl., 405 P.2d 993 (1965).

The problem presented by this reasoning is not so much with the statement of controlling law as it is with its application to the facts. As we read it defendants' cross-petition discloses more than a "mere allegation" of a clerical error and, in effect, alleges a mutual mistake resulting from the erroneous insertion in the note of 135 monthly payments, instead of 226, contrary to the agreement of the parties.

▮ The law under these circumstances is that where by reason of a scrivener's mistake an instrument "omits or contains terms or stipulations contrary to the common intention of the parties . . . ." a court of equity will consider it a mutual mistake common to both parties—that is, the scrivener left out or included provisions neither party intended—and therefore correct the error in a manner that will place the parties in the position they would have occupied had the error not occurred. *Cunnius v. Fields,* Okl., 449 P.2d 703 (1969); *Dennis v. American-First Title & Trust Co., supra;* *Matlock v. Wheeler,* Okl., 306 P.2d 325 (1956).

▮ Giving the pleading a liberal construction to which it is entitled, requires us to hold, therefore, that defendants have sufficiently pleaded grounds for reformational relief.

### IV

Plaintiffs' second proposition—that the court erred in reforming the instrument without hearing evidence—is likewise without merit because the admissions they made in their petition regarding the intentions of

the parties justify the court's rendition of what, in effect, is a judgment in the nature of one on the pleadings. *Love v. Harvey,* Okl., 448 P.2d 456 (1968); *Jones v. Liberty Plan of America, Inc.,* Okl., 418 P.2d 920 (1966).[1]

The admissions we refer to are set out in the note and mortgage attached to plaintiffs' petition. In them plaintiffs admitted these three essential facts: (1) that they owed defendants the principal sum of $13,500; (2) that they promised to pay the debt in monthly installments of $100 each; and (3) that they promised to pay six percent interest on the unpaid principal balance "at the maturity of each installment" and with each payment.

■ Examination of the note gives rise to the strong suspicion that its scrivener did not know what he was doing. On the face of the printed form appear several errors which had to be unintentional because (a) they are so gross, and (b) they depart sharply from the intention of the parties as manifested in the contract of sale and the securing mortgage. For example, the payees are not named in the space provided for such identification, but instead the amount plaintiffs promised to pay was written in it. At another place the note provides for 135 installments of $100 each (which equals the principal amount of the note) *and* interest at the rate of six percent "per month" (the printed term "annum" having been x'd out). Thus, as written, the note calls for interest the first month in the amount of $810—an exorbitantly usurious rate of nearly 70 percent per annum.[2]

Aside from these and kindred errors, certain language inserted in the note form is ambiguous. The most noticeable uncertainty relates to interest. After referring to a rate of six percent per month, the scrivener added that it was to be "included in each payment." Does this phrase mean that each $100 installment shall be applied first to interest and the remainder to principal? Or does it mean a payment of $100 on the principal shall be made each month and with it promisor shall also pay six percent per month interest? As we shall point out later, the lapse of time has made the meaning of the doubtful phrase immaterial.

■ The question remains, then, what material fact was there in dispute which should have been heard and resolved? Plaintiffs call none to our attention and we cannot perceive of any. Had the defense of usury been proffered by plaintiffs then there could have arisen the question of a corrupt intent on the part of defendants to extract unlawful interest. *Deming Inv. Co. v. Grigsby,* 65 Okl. 88, 163 P. 530 (1917). But it was not and the only other possible defense we can think of that would allow plaintiffs to escape paying interest would be that the parties had an express agreement plaintiffs would pay none.[3] Not only was such a defense not pleaded in plaintiffs' answer to defendants' cross-action but had it been it would have been in conflict with the admissions of plaintiffs in their petition.

That the note was misdrawn is a fact beyond doubt. The mortgage recites that it is "to secure the payment of one promissory note of even date [October 15, 1964] herewith: Made to Rosa Beck, W. H. Beck, Winona Smith (now Holliday) and Clifford Holliday, Okla. City *with 6% per cent. [sic] interest per annum from date payable monthly . . . .*" (emphasis added) The contract of sale reads in part:

"Purchaser to acquire property under a contract for deed, *paying $100 per month*

---

1. In deciding this case we assume that the court did adjudicate the matter without there having been a formal hearing because the journal entry does not say there was one. Whether evidence was offered by either party on November 3, 1976 is not disclosed by the record.

2. Usury with regard to this 1964 note as authorized by 15 O.S.1961 § 267 (repealed in 1969. See 14A O.S.1971 §§ 1–101 et seq.) was not raised as a defense against defendants' plea for

interest. The defense must be pleaded to avoid waiver. *Ionic Petr., Ltd. v. Third Finance Corp.,* Okl., 411 P.2d 492 (1966).

3. The basis for this conclusion is that by statute a loan of money "is presumed to be made upon interest, unless it is otherwise expressly stipulated at the time in writing." 15 O.S.1971 § 263.

*at 6% interest included.* When 10 payments have been made and the garage paid for the seller will deed property to purchaser and take a first mortgage for the unpaid balance *to be liquidated by continued payments as above.*" (emphasis added)

The trial court's construction not only avoids absurdity, but recognizes that the parties agreed upon a rate of interest within a range buyers and sellers of metropolitan real property generally agreed to in 1964.

Equity will correct errors in an instrument shown to have resulted from an unintentional drafting mistake. *State ex rel. Comm'rs of Land Office v. Phillips Petr. Co.*, Okl., 258 P.2d 1193 (1953). We hold, therefore, that the decree was validly predicated on what the note and mortgage revealed the agreement of the parties to be, namely, that (1) plaintiffs would pay defendants interest on the deferred principal balance of the note, (2) the rate of interest was to be six percent per annum, and (3) the interest was to be paid monthly.

V

Nor did the note's earlier mentioned ambiguity, concerning what the parties intended the total monthly payments to be, present an issue requiring the adduction of evidence because at this late date the problem became merely a matter of mathematics and mechanics for the court. The method employed by the trial judge to achieve payment of the interest—reforming the note by deleting 135 and in effect substituting the number 226 and allowing the balance to be paid at the rate of $100 per month beginning December 1, 1976—appears to us to be fair and equitable, particularly to the plaintiff mortgagors.

Affirmed.

BACON and NEPTUNE, JJ., concur.