## O'NEAL v. HARPER.

No. 27397. Nov. 2, 1937.

Rehearing Denied Jan. 25, 1938.

Application for Leave to File Second Petition for Rehearing Denied Feb. 8, 1938.

Morrill & Snodgrass, for plaintiff in error.

Mounts & Chamberlin and R. L. Farrington, for defendant in error.

HURST, J. This is an action by Mrs. M. C. O'Neal to cancel and set aside a mineral deed conveying an undivided one-half interest in the oil and gas royalty covering approximately 110 acres owned by plaintiff. The deed bears date January 5, 1935, and the defendant, W. R. Harper, was the grantee.

Plaintiff in her petition alleged that the defendant made certain misrepresentations regarding the value of her land for oil and gas purposes and 'agreed to pay her $110 for one-half interest in the royalty, but that upon execution and delivery of the deed the defendant gave plaintiff a check for the sum of $55 and before she could protest, he left the premises. It is further alleged that plaintiff still holds said check and tenders same to defendant. Plaintiff then seeks a cancellation upon the ground of fraud and misrepresentation and inadequacy of consideration. Defendant answered denying all the allegations of plaintiff's petition and alleged that $55 was the true consideration for the deed.

The testimony was conflicting throughout. Plaintiff testified that the defendant came to her home accompanied by one J. W. Fondren for the purpose of buying the royalty on her 110-acre farm, that after some negotiations they agreed to pay $110 for an undivided one-half interest, that the defendant and Fondren left the premises and returned the next day with a deed prepared and took the plaintiff and her husband to the town of Tipton, where the deed was acknowledged. She testified that they then returned to her home, and the following took place, to use her own language:

"Well, we all got out and went in and we lit the lamp, and he (defendant) said, 'Oh,' he said, 'I guess I better pay you.' So he wrote the check out at the table and handed it to this little boy of mine, this little grandson of mine, and he (the grandson) turned around and handed it to me. But before he handed it to the child he stood there and held it a good while. And before he handed it to me, Mr. Harper got up and walked over towards the door, and the child handed the check to me. And I said, 'Why, my goodness, this check is surely not right; it is not but for $55, and I thought it was supposed to be for $110.' He said, 'I never bought but a half interest in it.' He said, 'Fifty-five acres, fifty-five dollars would be that.' I said— My husband spoke up, 'Gentlemen, that's not right; she is not satisfied.' Said, 'That's not right; we were supposed to satisfy her'."

She then stated that Fondren said, "Come on, Harper, let's go," and they left; that she did not cash this check and tenders it into court. This testimony was corroborated by plaintiff's husband.

The circumstances surrounding the physical delivery of the deed to the defendant are not shown. Plaintiff's husband testified it was left with a notary public when the acknowledgment was taken, but the defendant testified he took it with him. The plaintiff's grandson testified that he delivered the check to plaintiff as she had stated, but upon cross-examination said that it was a newspaper and not a check which he handed plaintiff. Defendant's testimony was that he agreed to pay $1 an acre for the royalty, and he flatly denied that plaintiff had made any objection to the amount of the check when he gave it to her. J. W. Fondren, who was interested in the transaction, corroborated the testimony of the defendant.

At the close of the trial the court made the following oral statement in part:

"In my opinion, there is no fraud here to justify the rescission of this contract. Now, the other part presents a question more difficult to the court; that is, whether or not the minds of the parties met and whether or not there is a contract. * * * Now, I don't agree with the plaintiff's attorney that the minds of the parties didn't meet. The minds of the parties did meet. In this action, plaintiffs intended to sell one-half the royalty on that 110 acres and the defendants intended to buy it. Now, there might be some misunderstanding as to the purchase price.

That was the only thing left. * * * But it appears to me here there was an intent, that the minds of the parties met. And the plaintiff's own testimony shows that the minds of the parties met on the sale of one-half of the royalty. That's agreed by both parties. They evidently agreed on that. The plaintiff says they were to pay $1 an acre for a one-half interest in 110 acres; and I think the plaintiff thought that and that was the contract they made.

"And it will be the order and judgment of the court that the sale will be set aside unless the defendants immediately pay the balance of that purchase price. And the costs will be attached against the defendants."

The court in its journal entry in favor of the defendant made the following finding:

"Second. The court further finds from the evidence that it was the understanding of the plaintiff that she was to receive $110 for the royalty conveyed by her to the defendant, and that it was the understanding of the defendant that he was to pay the sum of $55 for the royalty conveyed in said royalty deed."

Plaintiff appealed to this court and filed her brief presenting the propositions that there was no meeting of the minds, no delivery, and that the court made a new contract for the parties which it was powerless to do, and further argument in favor of certain other assignments of error. Thereafter, by order of this court, the case-made was returned to the trial court, and the finding set out above replaced by the following finding:

"Second. The court further finds from the evidence that the plaintiff and defendant agreed upon a consideration of $110 for the royalty conveyed by the plaintiff to the defendant, that $110 was the agreed consideration for the royalty deed involved in this suit, that upon a basis of said consideration of $110, the contract was made, that the defendant has paid on Jan. 5, 1935, to the plaintiff one-half thereof, or $55, and that the defendant should be required to pay immediately the remaining one-half thereof, to wit: the sum of $55, to the plaintiff. * * *"

In all other respects, the corrected journal entry was the same as the original one.

The defendant thereafter filed his brief, and, taking no exception to the plaintiff's proposition that the meeting of the minds is essential to the validity of a contract, asserts that the finding in the corrected journal entry was not against the clear weight of the evidence. Without discussing the other proposition raised by plaintiff and controverted by defendant, we must first determine whether there was mutual assent of the parties in making this conveyance.

The first consideration is whether this question can be adjudicated by this court, inasmuch as the petition contained no allegations regarding mutuality. Defendant contends that plaintiff is attempting to prosecute her appeal upon a different theory than that upon which the case was tried, contrary to the holding in Cooke v. Southwest Petroleum Co. (1936) 177 Okla. 458, 61 P. (2d) 16, but the trial court made a finding on this issue, and as there was no objection to the introduction of the testimony regarding the amount that plaintiff thought she was to receive and the defendant thought he was to pay, it was proper to treat the petition as amended to conform to the facts proved. Newman v. Kirk (1933) 164 Okla. 147, 23 P. (2d) 163. This theory, therefore, is not being raised for the first time in this court.

In answer to this question, we agree with contention of plaintiff that there has been no mutual assent. The oral statement of the trial court quoted above discloses the error. Its conclusion appears to be that the minds of the parties met on the subject of the contract, that is, the sale of this particular interest, but "there might be some misunderstanding as to the purchase price." This error is further reflected in the first journal entry where judgment was rendered for defendant although it was found that the understanding of plaintiff was that she was to receive $110 for the royalty and it was the understanding of the defendant that he was to pay $55. The purchase price was a material part of the contract, and it is necessary that there be a meeting of the minds on the amount thereof before a valid contract could exist. It is not enough that plaintiff intended to sell this particular royalty interest and that defendant intended to buy it. Frazier v. Powell (1934) 169 Okla. 537, 37 P. (2d) 920; Sticelber v. Iglehart (1934) 169 Okla. 453, 37 P. (2d) 638; Atwood v. Rose (1912) 32 Okla. 355, 122 P. 929.

However, the corrected journal entry recites the true holding of the court for the purpose of this appeal, and we must consider the sufficiency of the finding of the trial court that the plaintiff and the defendant agreed upon the consideration of $110. We find this to be against the clear weight of the evidence. The question is one of intention; what was the understanding of the

parties at the time the contract was entered into?

As shown in the foregoing analysis of the testimony, the defendant intended to pay only $55 for the interest he was to acquire, and that intention was manifested by giving the plaintiff a check for that amount. Plaintiff contends that she intended to sell for $110 and no less, and that statement is corroborated by her refusal to cash the $55 check and her immediate objection to the defendant that she had not agreed to accept $55. It is, of course, elemental that there must be a meeting of the minds of the parties upon all essential elements before a contract is created. Sections 9390, 9410, and 9425, O. S. 1931. In the instant case the minds of the parties did not meet upon the essential element of consideration; the defendant being mistaken as to the amount to be paid, there was no mutual consent, and consequently no contract was created. There existed only an offer by plaintiff to sell the interest in question for $110 and a counter offer by defendant to buy for $55. Neither offer was accepted. The counter proposal constituted a rejection of the offer, and no other contract was made prior to the filing of this suit. Minneapolis & St. L. Ry. Co. v. Columbus Rolling Mill (1886) 119 U. S. 149.

It is apparent from the evidence that the defendant was mistaken as to the consideration, and he did not manifest any intention of being bound to a contract wherein the purchase price was $110, but the trial court's judgment establishes his acceptance of plaintiff's offer; in effect, reforming the contract in so far as the defendant is concerned. But in so doing, the court erred, for a mistake on one side, if it is material. may be grounds for rescinding and cancellation by a court of equity, but not for reforming an agreement. Dulany v. Rogers 50 Md. 524; Frazer v. State Bank (Ark.) 141 S. W. 941. In reforming a contract, equity makes it speak the minds of the parties, as they actually intended, but here, the effect is to make it speak the mind of one, but not of the other. Crowe v. Lewin, 95 N. Y. 423. And since there was no meeting of the minds, no contract existed, and the court does not have the power to create one for the parties.

For the foregoing reasons, the judgment is reversed, with directions to render judgment in favor of plaintiff canceling and setting aside said conveyance.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH and CORN, JJ., concur.