J. W. WATKINS and Allyne C. Watkins, his wife, Plaintiffs in Error,

v.

GRADY COUNTY SOIL AND WATER CONSERVATION DISTRICT, Defendant in Error.

No. 42151.

Supreme Court of Oklahoma.

Feb. 27, 1968.

492

Smith, Smith & Cook, Oklahoma City, Owen Vaughn, Chickasha, for plaintiffs in error.

C. D. Van Dyck, Jr., Chickasha, for defendant in error.

BERRY, Justice.

This appeal involves the correctness of the trial court's judgment enjoining defendant landowner from interfering with an easement executed in favor of plaintiff, Grady County Soil & Water Conservation District, a public corporation organized and existing under state law.

Defendants owned and occupied a quarter section of land in Grady County as their homestead. Plaintiff Conservation District was carrying out a cooperative plan for control of flood waters in the Laflin and Winter Creek watersheds in the county. This plan required securing of easements for dam sites upon predetermined locations, one of which (Site 5) was to be upon defendants' land. On November 18, 1963, defendants executed an easement which granted plaintiff the right to construct, maintain and operate a flood control dam upon their land, for a recited consideration of $1.00, which was not paid. The ease-ment, which described defendants' entire quarter section, was recorded and plaintiff began a detailed survey preliminary to beginning construction. While so engaged defendants directed these representatives to leave the premises.

On April 5, 1965, plaintiff filed suit seeking a restraining order to enjoin defendants from interfering with continuance of surveying and actual construction. Upon allegation of irreparable damage defendants were restrained from further interference by order dated April 30th and the matter set for further hearing.

On June 3, 1965, defendants filed answer denying the material allegations of the petition, and cross-petition alleging the easement had been procured by misrepresentation and fraud and without consideration, and should be canceled and set aside. Further, that defendants were entitled to a permanent injunction, having no adequate remedy at law to prevent plaintiff from building the dam structure and thereby damaging the land and destroying crops. Defendants asked cancellation of the written easement and removal of same as a cloud upon their title, and that plaintiff be perpetually enjoined from interfering or molesting their property. Defendants also asked damages for trespass and punitive damages.

The temporary restraining order granted plaintiff was continued in effect pending the trial court's final determination. During this time defendants sought dissolution of the temporary order, and plaintiff sought contempt citations against defendants for alleged violation of the terms of the restraining order. Before trial plaintiff filed amended answer to the cross-petition alleging completion of all preliminary work and execution of contracts for construction of dams in the project, including the structure on defendants' land, which was a necessary and integral part of the project; further, if defendants were permitted to rescind the easement irreparable damage and expense would be caused members of the District whose lands were included in the project.

The evidence disclosed the easement was obtained from defendants by one Nunley, an employee of the Soil Conservation Service in the county, who took the drafted easement to defendants for execution, but did not direct attention to the fact the instrument granted an easement to the entire tract. The instrument was signed by defendants, in presence of Nunley and Goins, while the parties were near the proposed dam site. Nunley also advised defendants they would have complete control of the dam and impounded water, but defendants were not advised as to height of the dam or spillway or the amount of water permanently covering the land because he did not know. This witness denied advising defendants there would be only .2–3 acres of permanent water, or that the water never would get out of banks in the west branch of the creek. Witness was working from an overlay map which did not provide means for determining the amount of land to be covered permanently.

The data book showing the Work Plan on the watershed had been prepared by the Soil Conservation Service in June, 1963. This booklet would have disclosed pertinent information concerning the project but witness did not have the booklet, and did not furnish a copy to defendants. This project information book disclosed a sediment pool of 16 acres would be entirely on defendants' land, and the flood water detention pool would cover 52 acres, of which 46 acres would cover their land. When the easement was executed this witness did not know the size area from which construction dirt would be taken, or that with the "draw down" pipe closed there would be 12 acres under water. Although they examined the overlay map, defendants were not told the approximate acreage to be covered at flood stage, or the amount of land to be taken. A member of the District organization previously had presented the proposed easement to defendants, who refused to sign. Nunley was asked to explain the easement to defendants and attempt to secure their agreement and execution of the instrument.

Nunley testified the easement intentionally covered the entire tract because defendants bore a reputation of having lawsuits, and the Conservation Committee wanted everything included so no question might arise. This attitude of Nunley, unrevealed to defendants, was inconsistent with the preliminary negotiations arising when plaintiff's agents and defendants were inspecting the premises. The record discloses no evidence the plaintiff District imparted or suggested to defendants, in preliminary negotiations or otherwise, any intention to obtain an easement on the entire tract. Even though the testimony of the parties is in conflict, it is significant that the basic inconsistency goes only to a fractional part of the tract to be inundated. This evidence, even considered in the light most favorable to plaintiff, can only be construed as showing the contract was entered into by mistake on the part of both litigants.

The evidence showed a proposed easement had been presented on two prior occasions, and defendants declined to sign. Defendants took Nunley's word for the instrument and did not read the description. The easement was not explained before being signed, nor the fact that District could raise the dam when desired, or that the entire quarter section was included.

Defendants testified they signed the easement without reading the instrument, relying upon what Nunley told them, but would not have signed had they known the entire quarter was included, or that 46 acres of their land would be covered at flood stage. They were shown an iron stob in the north field and advised this would be flood stage, which might occur once each fifty years. Defendants testified they were advised that only a few trees would need to be removed near the dam, and only 2–3 acres would be covered. Earlier defendants refused to execute the easement when advised that some large trees in the area would have to be removed.

An engineer, who conducted a survey for defendants, testified the base of the trees

along the west branch would be approximately 23.5 feet below the top of the dam. There was a small dam impounding water on the northwest stream branch approximately one fourth mile from the dam site. Survey showed the top of this small dam would be approximately 7.6 feet below the spillway level of the proposed dam. Some 400–500 feet upstream was another small dam impounding water. Survey showed the top of this structure was approximately 1.5 feet below the bottom of the emergency spillway. Defendants' evidence showed these dams had been constructed along the west branch in order to create ponds, which were utilized by defendants' sons in operation of a fishing bait business.

Without further analysis and narration, it is sufficient to observe the evidence fairly reflects a total failure to apprise defendants specifically concerning the term or extent of the easement sought. Neither was any specific information imparted relative to the actual size of the proposed dam, the area to be inundated entirely, what would be covered in impounding flood waters, the approximate water line or the timber which would have to be destroyed. The witness Nunley admittedly used an available map in attempting to delineate the area to be covered, but did not impart actual information concerning the extent of the project which had been compiled and was available from his own agency.

The trial court made written findings of fact, upon which were based conclusions of law which provided the basis for the judgment entered in plaintiff's favor and against defendants on their cross-petition. The trial court concluded the detriment suffered by plaintiff, and agencies of the Federal government, prior to notice of intention to withdraw the easement constituted sufficient consideration for defendants' easement, since the other elements of a contract were present; the evidence of fraud and misrepresentation was not sufficiently clear and convincing to entitle defendants to relief, particularly when considered with Nunley's testimony and in view of defendants being intelligent persons; whether an easement was granted should be determined by ascertaining the situation of the parties from the language of the instrument which, if uncertain or ambiguous allows the court to inquire into and consider surrounding circumstances. The trial court entered judgment finding the instrument involved was a valid easement and the defense of fraud had not been proved, so that defendants should be enjoined and restrained from interfering with plaintiff in exercise of the easement for construction and operation of the flood control project.

■ It is elementary that there must be a meeting of the minds of the parties on all material parts of the agreement in order to settle a valid contract.

■ Contracts which result from a mistake of fact are subject to rescission. In 12 C.J.S. Cancellation of Instruments § 27B (2), the text states the general rule thus:

"Where a contract in writing is executed by only one of the parties, under a mistake as to a fact which is of the essence of the contract, the mistake constitutes a ground for a court of equity to rescind and cancel the apparent contract as written, and to place the parties in statu quo, this being the rule whether the contract has been executed or is merely executory. * * *"

The quoted rule is also a matter of statutory declaration. See 15 O.S.1961, §§ 2, 51, 66.

In O'Neal v. Harper, 182 Okl. 52, 75 P.2d 879, syllabus 2 states:

"To constitute a valid contract there must be a meeting of the minds of the parties on all material parts of the agreement."

In Bond v. Chalfant, 201 Okl. 600, 208 P.2d 535, the quoted syllabus was restated, and syllabus 3 then announces:

"Where due to a mutual mistake of fact the minds of the contracting parties failed to meet, equity may rescind the apparent contract."

In Womble v. Mahoney, Okl., 383 P.2d 26, we quoted the rule stated in 12 C.J.S. Cancellation of Instruments § 21, to the effect that equity will rescind an agreement procured or induced by material misrepresentations or false statements although honestly made with no intent to deceive. The reason for the rule is not whether the representation is knowingly false, but whether the other party believed it to be true and thus was misled by such representations into making the contract. Expressing this rule, syllabi 3 and 4, in Womble state:

"A unilateral mistake of fact going to the essence of the contract may be ground for equitable cancellation but not for reformation."

"Misrepresentation of material facts, although innocently made, if acted on by the other party to his detriment, will constitute a sufficient ground for rescission and cancellation in equity."

Viewed most charitably, this record shows the purported easement was granted as the result of material misrepresentations, even if not made with fraudulent intent. Defendants' evidence was that Nunley actually made misrepresentations, although this was denied. The uncontradicted engineering evidence showed the lake area could not conform to the boundaries pointed out by him as representing the high water line. Admittedly, plaintiff's agent did not advise defendants concerning actual conditions which would exist upon completion of the dam. Rather, he conceded his own lack of pertinent information as to size of the project, the amount of land to be taken, or the depth and size of the pool, either in normal periods or at flood time. As respects meeting of the minds, it is noteworthy the purported easement was drafted to include the entire farm at the suggestion of the "Committee", because of defendants' reputation for having lawsuits, and in order to cover everything and avoid any question " * * * about any of it getting on there." The conclusion that no misrepresentations were made which misled defendants, because plaintiff's agent neither advised nor discussed certain facts of the project due to his own lack of knowledge, is non sequitur. The present appeal reflects a stronger case for cancellation than the facts reflected in Berlands, Inc., etc. v. Northside Village, etc., Inc., Okl., 378 P.2d 860.

Since the unilateral mistake of fact requires cancellation of the purported easement, we need not discuss the conclusions of law relative to existence of sufficient consideration, or propriety of considering surrounding circumstances in order to ascertain the parties intentions.

Judgment reversed with directions to the trial court to set aside the judgment appealed from, and to enter judgment cancelling the purported easement.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, LAVENDER and McINERNEY, JJ., concur.