Douglas AYRES, Appellant (Plaintiff),

v.

STATE of Wyoming, Appellee (Defendant).

No. 85–259.

Supreme Court of Wyoming.

May 1, 1986.

Robert W. Costin, Laramie, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., Margery B.

---

Cozzens, Student Intern, Wyoming Prosecution Assistance Program, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

Douglas Ayres, a Wyoming resident, was convicted of three offenses of driving while his Wyoming driver's license was revoked pursuant to § 31–7–135, W.S.1977 (1984 Replacement). He asserts on appeal as a defense that he could legally drive in Wyoming on a nonresident Colorado operator's temporary permit. We deny his claim, and affirm the convictions.

The issue presented by appellant is:

"Whether or not the district court erred in its order on appeal * * * that the defendant cannot drive in Wyoming on a non-resident operator's permit to drive in Colorado."

The State argues that:

"It is illegal for appellant, whose driving privileges have been suspended and his driver's license revoked, to drive in Wyoming on a non-resident driver's license."

## FACTS

On April 29, 1985, a Laramie police officer saw appellant Ayres riding a motorcycle in the Laramie city limits. The officer used the motorcycle license plate number to identify him as the owner, and then ran a driver's license check. Later that day, the license check revealed that the license had been revoked from July 3, 1984, to July 3, 1987 (a conflicting document in the record states that it was revoked from August 13, 1984, to August 13, 1987). The officer visited Ayres at his parents' house and asked to see the motorcycle. Ayres accommodated the request, and with recognition of the motorcycle as the one he had seen earlier, the officer felt the motor, and found that it was still warm.

Ayres was summoned to appear before the Albany County Court on charges of "driving while license suspended or revoked" pursuant to § 31–7–135, W.S.1977 (1984 Replacement).

On June 5, 1985, Ayres was again spotted by a Laramie police officer riding his motorcycle in Laramie and cited for the offense. Never to be deterred, a similar driving-while-under-revocation incident occurred on June 11, and the three offenses were consolidated for trial. After a bench trial, Ayres was found guilty of driving while under suspension, in violation of § 31–7–135, resulting in sentences of a $300 fine plus costs and three days in jail for the April 29 violation; a $350 fine plus costs and four days in jail for the June 5 violation; and a $400 fine plus costs and five days in jail for the June 11 violation.

Ayres appealed his three convictions to the Albany County District Court, asserting that at the time the citations were issued he had a valid temporary permit to drive issued by the State of Colorado which was taken by the patrol officer when he was stopped and given the first ticket. He contends that the temporary Colorado permit authorized driving in Wyoming even though as a Wyoming resident his Wyoming driver's license was suspended (actually revoked, but the difference is immaterial).

In affirming Ayres' convictions, the district court found:

"1. That the Defendant's driving privileges had been suspended in Wyoming, as supported by the record.

"2. The Defendant was a resident of Wyoming, as supported by the record.

"3. That the Defendant received a nonresident operators permit to drive in Colorado, but his driving privileges were still under suspension in Wyoming, as supported by the record.

"4. *That the Defendant cannot [legally] drive in Wyoming.*" (Emphasis added.)

## DISCUSSION

Appellant's argument centers around this leap in logic:

1. A Wyoming resident whose Wyoming driver's license is suspended or revoked cannot legally drive in Wyoming;

2. A nonresident whose nonresident's license is suspended or revoked may not legally drive in Wyoming;

3. However, a Wyoming resident whose Wyoming driver's license is suspended or revoked but who gets a Colorado nonresident permit can drive legally in Wyoming. This argument may be ingenious, but it is not supported by common sense or by statute.

The applicable statute in effect at the time of the offenses is § 31–7–132, W.S. 1977 (1984 Replacement):

"Restriction on operation under foreign license during suspension or revocation.

"Any resident or nonresident whose driver's license or privilege to operate a motor vehicle in this state has been suspended or revoked as provided in this act, shall not operate a motor vehicle in this state *under a license or permit issued by any other jurisdiction* or otherwise during the suspension or after a revocation until a new license is obtained when and as permitted by this act." (Emphasis added.)

The definition of motor vehicle includes motorcycles, § 31–1–101(a)(xv)(E), W.S. 1977 (1984 Replacement). "This act," referred to twice in the quoted section, is §§ 31–7–101 through 31–7–139, W.S.1977 (1984 Replacement), and includes § 31–7–127(d)(iii), which allows the Motor Vehicle Division to revoke a driver's license for three years for three or more convictions of driving while under the influence occurring within a five-year period preceding the date of the most recent offense.[1] It was pursuant to this section that appellant's Wyoming driver's license had been revoked.[2]

Appellant had been issued a Colorado nonresident operator's license (properly or improperly), which may confer on him the privilege of driving in Colorado, but Wyoming's statutes assure us that his Colorado license does not provide him any right to drive in Wyoming. The district court was correct in affirming the three convictions pursuant to § 31–7–135.[3]

Common sense supports this conclusion. If the law were otherwise, Wyoming residents whose Wyoming licenses had been

---

**1.** The record reveals that Ayres was convicted of driving while under the influence in July, 1980, August, 1980 and May, 1984, and in July, 1984 of refusing to take a chemical test under the implied-consent law.

**2.** There appears to be a conflict between the statute which was in effect in 1984, when Ayres' driver's license was revoked, and the revocation period he received. In 1984 the applicable subsections of § 31–7–127, W.S.1977, read:

"(d) Upon conviction under W.S.31–5–233 [driving while under the influence], the license shall be:

    \*     \*     \*     \*     \*     \*

"(iii) For the third conviction, revoked.

    \*     \*     \*     \*     \*     \*

"(f) A person whose driver's license has been revoked under paragraph (d)(iii) of this section may not apply for a new license until *five (5) years* after revocation of his license." (Emphasis added.)

Ayres' license was revoked for three years only, not five. A three-year revocation period, however, is consistent with a subsequent amendment to § 31–7–127(d):

"(d) Upon conviction under W.S.31–5–233 or other law prohibiting driving while under the influence, the division shall \* \* \*:

"(iii) For three (3) or more convictions under W.S.31–5–233 or other law prohibiting

driving while under the influence occurring within a five (5) year period preceding the date of the most recent offense, revoke the license for three (3) years."

Our confusion arises because the amendment, which appears in the annotations to § 31–7–127, W.S.1977, 1984 Cum.Supp., did not become effective until April 1, 1985. However, the issue is academic, because Ayres' license was revoked at the time he was convicted of driving while under suspension, and Ayres' earliest opportunity to apply for a new license will be the summer of 1987. He may, in fact, have to wait even longer to apply, for § 31–7–135(b), W.S.1977 (1984 Replacement) (now § 31–7–134(b), W.S. 1977, 1985 Cum.Supp.), requires the Motor Vehicle Division to extend the revocation period for an additional year upon receiving the record of a person's conviction for driving while under suspension or revocation. The statute may now require three additional one-year periods of suspension. The combination 12-day jail sentence may afford Mr. Ayres time to contemplate this complexity engendered by driving with a revoked Wyoming license.

**3.** The 1985 amendments to this section did not become effective until July 1, 1985, which was after all three violations of this section were committed. Chapter 234, § 4, S.L. of Wyoming 1985, p. 541. In reenactment, the section was renumbered and is now § 31–7–134, W.S.1977.

suspended or revoked could simply obtain a license from a nearby state and continue to drive in Wyoming. The state's interest in revoking a driver's license is public health, safety and welfare—to remove from our highways a driver who has proven himself unfit to drive in a manner which will not interfere with the safety of others. *State ex rel. Motor Vehicle Division v. Holtz*, Wyo., 674 P.2d 732 (1983); *Weaver v. Public Service Commission of Wyoming*, 40 Wyo. 462, 278 P. 542 (1929); 7A Am.Jur.2d Automobiles and Highway Traffic § 96, p. 269. That interest is addressed by the statute covering those who do continue to drive after loss of driving privileges, § 31–7–135:

"Driving while license cancelled, suspended or revoked.

"(a) Any person who drives a motor vehicle on any public highway in this state at a time when his privilege to do so is cancelled, suspended or revoked by a court or the [motor vehicle] division is guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than seven hundred fifty dollars ($750.00) and by imprisonment for not more than six (6) months."

For its violation, appellant was three times convicted. That he obtained a driver's license from another state will render no excuse or acquittal assistance.

Affirmed.