The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Craig Deon SYRIE, Defendant–Appellee.

No. 04SA214.

Supreme Court of Colorado,
En Banc.

Nov. 22, 2004.

James J. Peters, District Attorney, Eighteenth Judicial District, Paul Wolff, Chief Deputy District Attorney, Centennial, for Plaintiff–Appellant.

David S. Kaplan, Colorado State Public Defender, John S. Portman, Deputy State Public Defender, Englewood, for Defendant–Appellee.

HOBBS, Justice.

In this interlocutory appeal, filed pursuant to C.A.R. 4.1, the prosecution contests the trial court's suppression of certain evidence obtained by the Aurora police from the apartment of the defendant, Craig Syrie.

In its suppression ruling, the trial court found that the police discovered a shotgun under a couch and obtained a statement from Syrie about the gun as part of a non-consensual warrantless search of the apartment. The prosecution does not challenge the trial court findings and conclusions on the consent issue.

Instead, the prosecution argues on appeal that the gun and Syrie's statement about it are admissible as results of a search incident to a lawful arrest. We hold that the prosecution conceded this argument in the sup-

pression hearing. Accordingly, we will not resolve this issue on appeal. Because the suppression order is supported by competent evidence, we uphold it.

## I.

On November 3, 2003, officers of the Aurora Police Department responded to information that "possible drug activity" was taking place at an Aurora apartment. Two patrol cars went to the apartment, which was leased to Joleen Blair. The defendant, Craig Syrie, lived with Blair. Blair admitted the officers, who had no warrant to search the apartment. Once inside, the officers began a general search of the apartment, combing the home for evidence of drug activity and finding some evidence in the living room.

While other officers were searching the back rooms, Sergeant Graham noticed that Syrie, sitting on a couch in the living room, was sweating profusely. Graham obtained permission from Syrie to search him for concealed weapons. Syrie stood up. During the pat-down search, Graham found a pocket knife and a crack cocaine pipe in Syrie's pocket. The officers brought in a chair from the kitchen. Graham asked Syrie to sit in the chair and take off his shoes and socks. When he complied, a nugget of crack cocaine fell out of his sock. The police placed Syrie under arrest and handcuffed him.

Sergeant Graham then suggested that Syrie, still sweating, might be more comfortable if he took off the second pair of pants he was wearing over his sweat pants. Syrie agreed. The officers helped him remove the second pair of pants, discovering in the pocket another crack pipe and some marihuana.

Officer Hirtle had been participating in the search of the back rooms of the apartment and returned to the living room in time to observe Graham's search and arrest of Syrie. After the arrest, Hirtle lifted the couch on which Syrie had been sitting. He found a twenty-gauge shotgun beneath the couch. In response to Hirtle's question, Syrie said that he would "take responsibility" for the shotgun. The gun was later determined to be stolen. After Syrie's arrest, the police discovered an outstanding warrant for his arrest arising from parole violations.

The prosecution charged Syrie with possession of a controlled substance,[1] a class six felony; possession of a weapon by a previous offender,[2] a class six felony; possession of marihuana,[3] a class two petty offense; possession of drug paraphernalia,[4] a class two petty offense; and a special offender violation for a felon in possession of a deadly weapon,[5] a sentence enhancer.

At the suppression hearing, the trial court found that the officers' initial entry into the home was lawful by consent of Blair, the lessee of the apartment. The court also found that Syrie's arrest was lawful. The trial court admitted all the drug evidence obtained from the search of Syrie's clothing.

The court then found that the police had no warrant or consent to search the apartment; accordingly, the general search of the apartment was unlawful. The trial court suppressed all evidence found during the unlawful search, including all evidence of the gun. We uphold the trial court's suppression order.

## II.

■ The prosecution argues on appeal that the gun and Syrie's statement about it are admissible as results of a search incident to a lawful arrest. We hold that the prosecution conceded this argument in the suppression hearing. Accordingly, we will not resolve this issue on appeal. Because the suppression order is supported by competent evidence, we uphold it.

### A. Standard of Review

■ When reviewing a trial court's suppression order, we consider the "interrelationship between the evidentiary facts of record, the findings of the trial court, and the

1. § 18–18–405(2.3)(a)(1), 6 C.R.S. (2003).

2. § 18–12–108(1), 6 C.R.S. (2003).

3. § 18–18–406(1), 6 C.R.S. (2003).

4. § 18–18–428, 6 C.R.S. (2003).

5. § 18–18–407(1)(f), 6 C.R.S. (2003).

applicable legal standards in review of the lower court's conclusion of law." *People v. D.F.*, 933 P.2d 9, 13 (Colo.1997). A trial court entering a suppression order engages in fact-finding and application of legal standards. *People v. Quezada*, 731 P.2d 730, 732 (Colo.1987). We defer to the trial court's factual findings and will not overturn them if they are supported by competent evidence in the record. *Id.* The legal conclusions of the trial court are subject to de novo review and reversal if the court applied an erroneous legal standard or came to a conclusion of constitutional law that is inconsistent with or unsupported by the factual findings. *Id.* at 732–33. We consider the legal conclusion of the trial court under the totality of the circumstances. *See D.F.*, 933 P.2d at 14.

### B. Warrantless Searches

The Fourth Amendment to the United States Constitution forbids unreasonable searches.[6] *People v. Wieser*, 796 P.2d 982, 984 (Colo.1990). Searches of the home or the person without warrants are presumed to be unreasonable. *People v. Hufnagel*, 745 P.2d 242, 245 (Colo.1987). At a suppression hearing, the defense has the burden of going forward with evidence that a search or seizure does not conform to constitutional requirements. *People v. Jansen*, 713 P.2d 907, 911 (Colo.1986). Evidence that the police did not have a warrant authorizing their search and seizure satisfies that burden. *Id.* The burden of going forward with evidence then shifts to the prosecution, which must show that the search and seizure were constitutional. *Id.*

The burden of proof, however, always remains with the prosecution to establish that a warrantless search falls within one of the narrowly defined exceptions to the warrant requirement. *Id.* Three primary exceptions for warrantless searches of the home are: (1) searches made with probable cause and under exigent circumstances, (2) searches made with valid consent, and (3) searches made under the emergency aid exception. *See People v. Allison*, 86 P.3d 421,

426 (Colo.2004). If no exception applies, evidence obtained from a warrantless search is inadmissible. *People v. Diaz*, 53 P.3d 1171, 1175 (Colo.2002).

Searches of certain areas of a home may also be made if they are incident to a lawful arrest. *Hufnagel*, 745 P.2d at 245. Searches incident to lawful arrests may include the arrestee's person and the area within the arrestee's immediate control. *Id.* at 245. These searches must be contemporaneous with or immediately following the arrest and confined to the area into which the defendant might reach to grab weapons or evidence. *Id.* at 247–48.

We have defined the area of an arrestee's immediate control, or the "wingspan," in various ways. *See, e.g., id.* at 246 (table one to two feet from defendant within wingspan); *People v. Clouse*, 859 P.2d 228, 234 (Colo.App.1992)(items under bed in twelve by fifteen foot hotel room within wingspan). We have also determined that the fact that an arrestee is handcuffed does not change the wingspan analysis. *Hufnagel*, 745 P.2d at 247. In *Hufnagel*, we declined to require case-by-case analyses of the scope of arrestees' wingspans, but instead held that the prosecution can meet its burden by showing that the search was contemporaneous with or immediately following the arrest and limited to the area immediately around the arrestee. While we do not require ad hoc factual analyses, the question of whether searches by police are properly within an arrestee's wingspan are necessarily questions of fact, based largely on the distance between the arrestee at the time of the arrest and the area searched.

Despite the established exclusionary rule, evidence initially discovered in an unconstitutional manner may still be admissible if the prosecution can establish that police would have inevitably discovered the evidence by lawful means. *See People v. Breidenbach*, 875 P.2d 879, 889 (Colo.1994). The prosecution bears the burden of showing a reasonable probability that police acting

6. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated." U.S. Const. amend. IV.

lawfully would have discovered the evidence. *Id.* Furthermore, the prosecution must show that the police were pursuing an independent investigation at the time of the illegal discovery, which inevitably would have led to the discovery of the evidence. *Id.*

### C. Incident to Lawful Arrest Issue Non–Reviewable Here

The trial court found that the police discovered the shotgun during a non-consensual warrantless search of the apartment. On appeal, the prosecution does not challenge the consent finding. Rather, the prosecution now argues that the gun was found as part of a valid search incident to Syrie's lawful arrest.

However, the prosecution did not adequately present the trial court with an opportunity to make findings of fact and conclusions of law on this ground for admissibility. Instead, after the trial court had made its findings of fact and ruling, the prosecution made an argument centered on a version of the inevitable discovery doctrine. Relying on the belated discovery of Syrie's outstanding arrest warrant, the prosecutor argued that "under the inevitable discovery principle, had he remained sitting on the couch, then the officers would have learned of his parole violation, that he had an active Warrant, they would have arrested him from that location; therefore, they would inevitably have discovered [the gun] in a search of his wingspan."

This argument was based purely on a pretended set of facts. The prosecutor chose not to argue that the search under the couch was incident to the lawful arrest as it actually occurred, thereby surrendering that argument. The trial court found the hypothetical argument presented to be too attenuated and contrary to the evidence: "given that he'd been moved, patted down, arrested and cuffed in the chair is, frankly too much of a stretch for me." The court concluded that the inevitable discovery doctrine, on which the prosecutor's argument was apparently based, does not permit the fact finder to "go back through that many intervening acts" to

consider whether the evidence inevitably would have been found.

■ We agree. The inevitable discovery exception does not invite speculation about possible series of events under which the evidence may have been discovered, but requires an affirmative showing of a reasonable probability that the evidence would inevitably be discovered through lawful means already initiated when the seizure was made. *See Breidenbach,* 875 P.2d at 889.

In presenting its argument the way it did, the prosecution did not give the trial court an adequate opportunity to make factual findings about the incident to lawful arrest ground for admissibility. By spinning the hypothetical argument about inevitable discovery and not putting into issue the incident to lawful arrest grounds, the prosecutor surrendered that issue.

■ We do not review issues on appeal about which the trial court did not have the opportunity to make factual findings. *See People v. Salazar,* 964 P.2d 502, 507 (Colo. 1998). In *Salazar,* the prosecution argued in the trial court that a stop and search of a defendant was justified as an investigatory stop with reasonable suspicion. On appeal, however, the prosecution argued that the encounter was not an investigatory stop but a consensual contact. We held that the prosecutor's argument at trial conceded that an investigatory stop had occurred. Because the consensual contact issue was not raised at trial and the trial court was not asked to make factual findings on consent, we declined to resolve it on appeal.

Likewise, the trial court here was not asked to make, and did not make, any findings regarding whether the post-arrest search under the couch was incident to Syrie's arrest. The prosecutor conceded this issue when she chose not to argue that the search was valid incident to the actual arrest and, instead, argued inevitable discovery based on a hypothetical set of facts. Thus, we will not resolve the incident to lawful arrest issue on appeal.[7]

---

7. We do not suggest that prosecutors must use talismanic language to preserve legal issues at the trial court level. *See Toothman v. Freeborn &*

*Peters,* 80 P.3d 804, 816 (Colo.App.2002)(holding that "although plaintiffs did not formally ask" trial court for a particular ruling, an argument

.The trial court's suppression order is based on competent evidence in the record, and we uphold it. *See Quezada,* 731 P.2d at 732.

## III.

Accordingly, we affirm the trial court's suppression order and return this case for further proceedings consistent with this opinion.

that went to the essence of the ruling desired adequately preserved the issue for appeal). Rather, the trial court must have adequate opportunity to make factual findings and legal conclusions on any issue that is later raised on appeal. In the absence of such findings and conclusions, we will not consider arguments injecting an issue not adequately presented to the trial court.