The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 17, 2022

## 2022COA133

**No. 22CA0305, *People in the Interest of S.Z.S.* — Juvenile Court — Dependency and Neglect — Termination of the Parent-Child Legal Relationship; Health and Welfare — Disability — Americans with Disabilities Act — Reasonable Accommodations**

A division of the court of appeals holds that a parent

challenging termination of her parental rights cannot claim for the

first time on appeal that she has a qualifying disability under the

Americans with Disabilities Act of 1990 that the department of

human or social services or the court failed to accommodate.  The

division also holds that when a court terminates parental rights for

abandonment under section 19-3-604(1)(a), C.R.S. 2022, it does not

need to consider whether the parent had a reasonable amount of

time to comply with a treatment plan or whether the department

made reasonable efforts to rehabilitate the parent.

COLORADO COURT OF APPEALS                                    **2022COA133**

Court of Appeals No. 22CA0305
Boulder County District Court No. 20JV235
Honorable Norma A. Sierra, Judge

The People of the State of Colorado,

Appellee,

In the Interest of S.Z.S., a Child,

and Concerning T.Z.D.M. and T.G.,

Appellants.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE J. JONES
Brown and Kuhn, JJ., concur

Announced November 17, 2022

Benjamin Pearlman, County Attorney, Debra W. Dodd, Special County
Attorney, Jeanne Banghart, Deputy County Attorney, Boulder, Colorado, for
Appellee

Josi McCauley, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Andrew Gargano,
Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant
T.Z.D.M.

Steven Baum, Office of Respondent Parents' Counsel, Denver, Colorado, for
Appellant T.G.

¶ 1    T.Z.D.M. (mother) and T.G. (father) appeal the judgment terminating the parent-child legal relationship between them and S.Z.S. (the child).  We affirm.

## I.    Background

¶ 2    In April 2020, the Boulder County Department of Housing and Human Services initiated an action in dependency and neglect and assumed temporary legal custody of the newborn child.  The Department alleged, among other things, that the child had been born at home without proper medical care and had tested positive for marijuana after mother took her to the hospital.  When the Department filed the petition, it didn't have any information about the identity of the child's father.

¶ 3    About a month later, the Department asked to amend the petition to add father as the child's alleged father.  The juvenile court granted the Department's request to serve father by publication.  Father didn't appear, and the juvenile court adjudicated the child dependent and neglected as to father by default judgment.  The court then adopted a treatment plan for father.

¶ 4 Meanwhile, mother denied the allegations in the petition and asked for a jury trial. The jury found in favor of the Department, and the juvenile court adjudicated the child dependent and neglected as to mother based on the jury's verdict. The court adopted a treatment plan for mother.

¶ 5 In April and May 2021, a psychologist performed a psychological evaluation of mother. The psychologist forwarded her report to the Department in late June 2021. The report included several recommendations for treatment and further consultation. But the psychologist didn't diagnose mother as suffering from any mental impairment rising to the level of a disorder under the DSM-V.

¶ 6 In September 2021, the Department moved to terminate mother's and father's parental rights. Shortly thereafter, father contacted the caseworker for the first time and requested genetic testing. However, he didn't comply with testing for several months. Genetic testing confirmed father's paternity in December 2021. The court adopted an amended treatment plan for father in January 2022.

¶ 7     The juvenile court held an evidentiary hearing on the Department's termination motion in February 2022.  After hearing the evidence, the juvenile court terminated mother's parental rights under section 19-3-604(1)(c), C.R.S. 2022, and father's parental rights under section 19-3-604(1)(a).

## II.     Mother's Appeal

¶ 8     Mother contends that the juvenile court erred by finding that (1) the Department made reasonable efforts to rehabilitate her and reunify her with the child when she had a disability that the Department didn't reasonably accommodate, and (2) she couldn't become fit in a reasonable time.  We disagree with both contentions.

### A.     Termination Criteria and Standard of Review

¶ 9     Under 19-3-604(1)(c), the juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent hasn't complied with an appropriate, court-approved treatment plan or the plan hasn't been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.

¶ 10    Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We won't disturb the court's factual findings if evidence in the record supports them. *Id.* The credibility of the witnesses — as well as the sufficiency, probative effect, and weight of the evidence and the inferences and conclusions to be drawn from it — is within the juvenile court's province. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law that we review de novo. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

## B.    Reasonable Efforts

¶ 11    Mother first contends that the Department failed to make reasonable accommodations for her disability, as required by the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, when it didn't implement the recommendations in her psychological evaluation. In response, the Department argues that mother didn't preserve an ADA claim for appellate review, and

4

therefore we shouldn't address it. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 ("[A]ppellate courts review only issues presented to and ruled on by the lower court.").

¶ 12     For the reasons discussed below, we agree with the Department that mother didn't preserve her ADA claim, and we therefore decline to review it.

### 1.     Law

¶ 13     Before the court may terminate parental rights under section 19-3-604(1)(c), the county department of human or social services must make reasonable efforts to rehabilitate the parent and reunite the family. §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2022. Reasonable efforts means the "exercise of diligence and care" for a child who is in out-of-home placement, and the reasonable efforts standard is satisfied when services are provided in accordance with section 19-3-208. § 19-1-103(114).

¶ 14     A parent may not assert the ADA as a defense in a termination of parental rights proceeding. *People in Interest of T.B.,* 12 P.3d 1221, 1223 (Colo. App. 2000). Nonetheless, the department has an affirmative duty to make reasonable accommodations for a parent with a qualifying disability when providing rehabilitative services to

5

that parent. *People in Interest of S.K.*, 2019 COA 36, ¶¶ 25, 34; *see* 42 U.S.C. § 12102 (defining "disability" under the ADA); 42 U.S.C. 12111(8) (defining "qualified individual" under the ADA). And the juvenile court must consider whether the department made reasonable accommodations for a parent's disability when determining whether it made reasonable efforts. *S.K.*, ¶ 34; § 19-3-208(2)(g) (services provided under this section must meet the provisions of the ADA). Absent reasonable modifications to rehabilitative services offered to a parent with a disability, the department fails to perform both its duty under the ADA to reasonably accommodate a disability and its obligation to make reasonable efforts to rehabilitate the parent, and thus it does not satisfy the criteria for terminating parental rights under section 19-3-604(1)(c). *S.K.*, ¶ 33.

## 2.    ADA

¶ 15    Mother contends that her ADA claim is preserved because her attorney argued in closing that mother had "psychological issues" and "there were a number of modalities recommended in the psychological evaluation that were never referred." We aren't persuaded.

¶ 16    For a parent to benefit from a reasonable accommodation, the parent must raise the issue of the ADA's applicability in a timely manner. *See In re Terry*, 610 N.W.2d 563, 570 (Mich. Ct. App. 2000). "The [d]epartment can accommodate, and the juvenile court can address, only disabilities that are known to them." *S.K.*, ¶ 22. Preferably, if the parent knows or has reason to know she has an ADA-cognizable disability, the issue should be raised before the court adopts a treatment plan and enters a dispositional order, so the department can include the requested accommodations in the treatment plan for court approval and can provide services accommodating the disability throughout the case. *See In re Adoption of Gregory*, 747 N.E.2d 120, 127 (Mass. 2001); *see also* § 19-3-507(1)(c), C.R.S. 2022 (where a parent has a disability, the department must identify accommodations and modifications in the report prepared for the dispositional hearing). "A parent who waits until the eleventh hour to request a modification under the ADA may thoroughly undermine her ability to establish that such modification is reasonable, particularly once the best interests of the child are taken into account." *State in Interest of K.C.*, 2015 UT 92, ¶ 27.

¶ 17    In some jurisdictions, courts have held that a parent may not

raise the ADA issue for the first time at the termination hearing.

*See Gregory*, 747 N.E.2d at 127; *Terry*, 610 N.W.2d at 570-71.  But

in Colorado, at least one division of this court has determined that

a parent can preserve an ADA claim by raising it for the first time in

closing argument at the termination hearing.  *People in Interest of*

*C.Z.*, 2015 COA 87, ¶ 9.  At any rate, waiting until the termination

hearing to raise the ADA issue is problematic because when the

department and the juvenile court don't know that the parent has a

disability, the department can't provide, and the court can't order

the department to provide, reasonable accommodations to

rehabilitate the parent during the case.  *S.K.*, ¶ 22.

¶ 18    However, even if we assume that a parent can preserve an

appellate claim by raising the ADA for the first time in closing

argument at a termination hearing, we still conclude that mother's

counsel didn't do so.  We acknowledge that mother's counsel noted

in closing that mother had some "psychological issues" and that the

Department should have made additional referrals based on the

recommendations in the psychological evaluation.  But neither

mother nor her attorney ever specifically mentioned the ADA,

asserted that she had a qualifying disability within the meaning of the ADA, or argued that the recommendations in the psychological evaluation amounted to reasonable accommodations for that disability.  While we agree with mother that her attorney wasn't required to use "talismanic language" to preserve her appellate claim, she still needed to present the court with an adequate opportunity to make findings of fact and legal conclusions on the ADA issue.  *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004) (quoting *People v. Syrie*, 101 P.3d 219, 223 n.7 (Colo. 2004)).  Mother's counsel didn't do so.

¶ 19    Still, mother insists that her disability, which she describes generally as a "mental impairment," was obvious.  *See* 42 U.S.C. § 12102(1)(A) (a disability includes a mental impairment); 28 C.F.R. § 35.108(b)(1)(ii) (2021) (mental impairment includes an "intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disability").  If the parent's disability is obvious, the department should know that an individual is disabled and would thus be required under the ADA to provide reasonable accommodations.  *S.K.*, ¶ 22; *see also In re Hicks/Brown*, 893

N.W.2d 637, 640 (Mich. 2007). But, in this case, no ADA-cognizable disability was obvious.

¶ 20 Mother relies on the caseworker's testimony at a temporary custody hearing before a magistrate that mother had difficulty paying attention to the child's cues and "she's diagnosed herself with [post-traumatic stress disorder (PTSD)]," and on her own testimony at that hearing that she was taking prescription medication for her anxiety. But mother's counsel did not then (or at any time later) indicate that this condition constituted an ADA-cognizable disability. And even the psychological evaluation, on which mother also relies, and which was provided to the Department more than a year later, concluded that she doesn't have a specific learning disorder, obsessive compulsive disorder, or borderline personality disorder. Although the evaluation identified some issues with anxiety, the evaluator noted that mother's symptoms didn't "reach the level of clinical paranoia." And while the evaluation notes that mother may have been "significantly traumatized" in the past, she "endorsed only two of the three required symptom clusters" for a PTSD diagnosis.

¶ 21   Considering all this, we aren't convinced that the court was on notice that mother had a disability under the ADA.  If mother's counsel believed that she did, given the Department's failure to recognize any such disability, it was incumbent on mother's counsel to raise the issue with the court so that it could resolve that factual question.  *See S.K.*, ¶ 21 n.2 (whether a parent is a qualified individual with a disability under the ADA requires a fact-specific determination that, if disputed, the court should resolve).  But because mother never raised the ADA issue, even by implication, either before or during the termination hearing, the juvenile court didn't make any specific findings about the applicability of the ADA for us to review.  And we "don't (and, indeed, can't) make findings of fact."  *Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 19.[1]

---

[1] In her reply brief, mother urges us to review her ADA argument under the miscarriage of justice exception to preservation, sometimes applied in dependency and neglect cases, if we conclude that the argument isn't preserved.  *See People in Interest of E.S.*, 2021 COA 79, ¶ 14.  We decline to do so.  As discussed, this issue is inherently fact-dependent, *People in Interest of S.K.*, 2019 COA 36, ¶¶ 21 & n.2, 35 & n.4, and we don't make factual determinations.  Moreover, mother didn't develop a factual record on the issue in the juvenile court sufficient to enable the juvenile court to make the relevant factual findings.

## C. Fit Within a Reasonable Time

¶ 22    Mother next contends that the juvenile court erred by finding that she couldn't become fit within a reasonable time.

¶ 23    An unfit parent is one whose conduct or condition renders her unable or unwilling to give a child reasonable parental care. *People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental needs and conditions. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).

¶ 24    In determining whether a parent's conduct or condition is likely to change within a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003). Where a parent has made little to no progress on a treatment plan, the juvenile court need not give the parent additional time to comply. *See People in Interest of R.B.S.*, 717 P.2d 1004, 1006 (Colo. App. 1986); *see also People in Interest of V.W.*, 958 P.2d 1132, 1134-35 (Colo. App. 1998) (even

"increased compliance" over the course of a case may not justify additional time).

¶ 25    A "reasonable time" isn't an indefinite time and must be determined by considering the child's physical, mental, and emotional conditions and needs. *A.J.*, 143 P.3d at 1152. What constitutes a reasonable time is fact-specific and varies from case to case. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007). However, when, as in this case, the child is under six years old, the court must also consider the expedited permanency planning provisions, which require that the child be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2022.

¶ 26    The juvenile court determined that mother was unfit based on her continuing mental health problems; lack of demonstrated sobriety; "history of engagement in domestic violence, both as a perpetrator and as a victim," for which she hadn't participated in treatment; and inability to integrate feedback from her parenting coaches. *See* § 19-3-604(2)(e) (a parent may be unfit based on "[e]xcessive use of intoxicating liquors or controlled substances"); *People in Interest of K.T.*, 129 P.3d 1080, 1082 (Colo. App. 2005)

(substance abuse); *People in Interest of C.T.S.*, 140 P.3d 332, 334 (Colo. App. 2006) (domestic violence). While the court recognized that mother had made some improvements during the case, it didn't believe that she could become fit within a reasonable time. *See V.W.*, 958 P.2d at 1134-35. The court noted that the child was very young, had been in foster care most of her life, and needed stability as soon as possible.

¶ 27 The record supports the court's findings. The caseworker testified at the termination hearing that mother "uses high levels of marijuana that aren't managed," stopped participating in individual treatment, didn't engage in domestic violence treatment at all, and wasn't able to integrate feedback from her parenting coaches during parenting time. The caseworker opined that, given mother's inability to address the major concerns in the case, mother couldn't provide the child with reasonable parental care. The caseworker also opined that mother couldn't become fit within a reasonable time, given the length of time that the child had been in foster care, as well as the length of time that mother had been given to demonstrate improvement. *See A.J.L.*, 243 P.3d at 256 ("[T]he trial court could reasonably find and conclude that the children's age

and need for permanency precluded giving mother more time to address her mental health needs.").

¶ 28     Mother argues that she could become fit within a reasonable time because she substantially complied with her treatment plan. Specifically, she notes that she maintained regular contact with the Department, attended about eighty percent of her visits, had housing and income from legal sources, participated in therapy, and completed the required evaluations. Coupled with her compliance, mother further asserts that, had the Department made reasonable accommodations for her disability, she could have become fit in a reasonable time.

¶ 29     We aren't persuaded by mother's argument, for two reasons. First, while there is record support for mother's assertion that she complied with parts of her treatment plan, we can't reweigh the evidence or substitute our judgment for that of the juvenile court. *See People in Interest of K.L.W.*, 2021 COA 56, ¶ 62. The record shows that the court properly considered evidence supporting mother's compliance, weighed it against contrary evidence and the needs of the child, and determined that mother couldn't become fit within a reasonable time. Because there is record support for the

15

court's finding, we can't disturb it. *See A.M.*, ¶¶ 15, 48. Second, because we have already determined that mother didn't preserve her ADA argument, her assertion that she could become fit within a reasonable time if she had reasonable accommodations necessarily fails.

## III. Father's Appeal

¶ 30 Father contends that the juvenile court erred by terminating his parental rights because (1) he didn't have a reasonable amount of time to comply with his treatment plan, and (2) the Department didn't make reasonable efforts. The Department contends that, because the juvenile court terminated father's parental rights under section 19-3-604(1)(a), the court didn't need to consider whether father had a reasonable amount of time to comply with his treatment plan or whether the Department made reasonable efforts. We agree with the Department.[2]

### A. Reasonable Time to Comply with the Treatment Plan

¶ 31 The juvenile court adopted a treatment plan for father in June 2020, following the entry of a default adjudication. This treatment

---

[2] Father doesn't challenge the sufficiency of the evidence supporting termination under subsection (1)(a).

16

plan only required that father contact and cooperate with the Department. But after father contacted the Department over a year later, the court adopted an amended treatment plan that was more comprehensive in January 2022. This was only a few weeks before the termination hearing.

¶ 32    Unlike mother, however, the juvenile court terminated father's parental rights under subsection (1)(a), which required the Department to prove, by clear and convincing evidence, that the parent (1) surrendered physical custody of the child for a period of six months or more and (2) didn't manifest during such period the firm intention to resume physical custody of the child or make permanent legal arrangement for the care of the child. In contrast to subsection (1)(c), subsection (1)(a) doesn't require that a parent be provided with a treatment plan before the court may terminate parental rights. *See People in Interest of L.M.*, 2018 COA 57M, ¶ 19; *see also* § 19-3-508(1)(e)(I), C.R.S. 2022 (the court may find that an appropriate treatment plan can't be devised as to a particular parent because the child has been abandoned as set forth in section 19-3-604(1)(a)).

¶ 33    Under subsection (1)(c), once a reasonable treatment plan is approved by the juvenile court, the parent must be given a reasonable amount of time to comply with its provisions.  *D.Y.*, 176 P.3d at 876.  But subsection (1)(c) is the only basis for termination in section 19-3-604 that requires the juvenile court to have first approved an appropriate treatment plan.  *L.M.*, ¶ 23.  Thus, the requirement that a court allow a parent a reasonable time to comply with a treatment plan only applies in cases in which parental rights are terminated under subsection (1)(c).  *See D.Y.*, 176 P.3d at 876 (under section 19-3-604(1)(c), "the General Assembly intended that a parent would be afforded a reasonable time to comply with an appropriate treatment plan before parental rights could be terminated").

¶ 34    Because the juvenile court terminated father's parental rights under section 19-3-604(1)(a), his reliance on subsection (1)(c) and *D.Y.* is misplaced.  Under subsection (1)(a), the juvenile court isn't required to provide a parent with a treatment plan and allow a reasonable time for compliance with the plan before it can terminate parental rights.  We therefore reject father's contention.

## B.    Reasonable Efforts

¶ 35    Father next contends that the Department failed to make reasonable efforts because it did not seek to engage him after paternity was established and instead immediately pursued termination.  We disagree.

¶ 36    As noted, when a juvenile court terminates parental rights under section 19-3-604(1)(c), it must consider whether reasonable efforts have been unable to rehabilitate the parent.  *See* § 19-3-604(2)(h).  However, because the court isn't required to adopt a treatment plan under subsection (1)(a), the court isn't required to make a finding of reasonable efforts when it terminates parental rights under that subsection.  *See C.Z.*, ¶ 57 (when a juvenile court finds that no appropriate treatment plan can be devised pursuant to section 19-3-604(1)(b), "the Department is relieved of its obligation to provide reasonable efforts").

¶ 37    Nonetheless, we recognize that the court did, in fact, adopt a treatment plan for father.  Of course, the Department is obligated to provide the services envisioned in the plan while the plan remains in effect.  *See id.* at ¶ 58.  But a court can make an abandonment finding under subsection (1)(a) regardless of whether a treatment

19

plan was adopted or services were provided. *See People in Interest of Z.P.S.*, 2016 COA 20, ¶ 29 ("[T]he court may proceed to terminate a parent's rights based on no appropriate treatment plan even when the existing dispositional order includes the provision of a treatment plan for the parent."). And under those circumstances, the court isn't required to consider whether the Department made reasonable efforts before entering its termination order. *See C.Z.*, ¶ 59. Thus, because the juvenile court ultimately terminated parental rights under section 19-3-604(1)(a), it wasn't required to consider whether the Department had made reasonable efforts. *See id.*

## IV. Conclusion

¶ 38    The judgment is affirmed.

JUDGE BROWN and JUDGE KUHN concur.